23566

SANGAMO WESTON, INC., Plaintiff v. NATIONAL SURETY CORPORATION, American Insurance Corporation, Fireman's Fund Insurance Company, The Travelers Indemnity Company, The Globe Indemnity Company, Certain Lloyd's Underwriters and Companies, American Motorists Insurance Company, Puritan Insurance Company, Prudential Reinsurance Company, and United States Fire Insurance Company, Defendants.

(414 S.E. (2d) 127)

Supreme Court

*Lemuel Gray Geddie, Jr.,* and *Mary Lou Hill,* of *Ogletree, Deakins, Nash, Smoak and Stewart,* Greenville, *John E. Heintz* and *Wendy M. Anderson,* of *Popham, Haik, Schnobrich & Kaufman,* Washington, D.C., *for plaintiff.*

*Stuart M. Andrews, Jr., Stephen G. Morrison,* and *Richard*

*H. Willis,* of *Nelson, Mullins, Riley & Scarborough,* Columbia, *Lawrence A. Levy* and *Gary Centola,* of *Rivkin, Radler, Dunne and Bayh,* New York City, *for defendants Nat. Sur. Corp., American Ins. Co.* and *Fireman's Fund Ins. Co.*

*John B. McLeod,* of *Haynsworth, Marion, McKay and Guerard,* Greenville, and *Mary Kay Vyskocil,* of *Simpson, Thacher & Bartlett,* New York City, *for defendant Travelers Indem. Co.*

*John E. Johnston, Jr.* and *Robert A. deHoll,* of *Leatherwood, Walker, Todd & Mann,* Greenville, *for defendant Globe Indem. Co.*

*Mason A. Goldsmith,* of *Love, Thornton, Arnold & Thomason,* Greenville, and *George B. Hall, Jr.,* and *Harry S. Redman,* of *Phelps, Dunbar, Marks, Claverie & Sims,* New Orleans, La., *for defendant Certain Lloyd's Underwriters and Companies.*

*James C. Parham, Jr.* and *Marshall Winn,* of *Wyche, Burgess, Freeman & Parham, P.A.,* Greenville, *Timothy C. Russell, Thomas S. Schaufelberger,* and *M. Joseph Sterner,* of *Drinker, Biddle & Reath,* Washington, D.C., *for defendant American Motorist Ins. Co.*

*Marshall Winn* and *James C. Parham, Jr.,* of *Wyche, Burgess, Freeman & Parham, P.A.,* Greenville, *Mitchell L. Lathrop, Kimball Ann Lane,* and *Kathleen Kenny,* of *Adams, Duque & Hazeltine,* New York City, *for defendant Puritan Ins. Co.*

*Paul J. Foster, Jr.,* of *Foster, Gaddy, Foster & Forston,* Greenville, *David L. Reiser, Michael R. Gregg, Elizabeth J. Caprini, Suzanne M. Crowley, Steven R. Apel, Jo M. Bonnell, Mary Ann Phillips* and *Marlene A. Kurilla,* of *Pretzel & Stouffer, Chartered,* Chicago, Ill., *for defendant Prudential Reinsurance Co.*

*Wilburn Brewer, Jr.* and *Marcus A. Manos,* of *Nexsen, Pruet, Jacobs & Pollard,* Columbia, and *Stephen H. Cohen* and *Wendy S. Greengrove,* of *McElroy, Deutsch & Mulvaney,* Morristown, N.J., *for defendant U.S. Fire Ins. Co.*

*John E. Johnston, Jr.,* of *Leatherwood, Walker, Todd and Mann,* Greenville, *for defendant Royal Ins. Co.*

Heard Nov. 14, 1990.

Decided Jan. 27, 1992.

TOAL, Justice:

The following questions have been certified to this Court pursuant to Rule 46:

1. What conflict of laws rule would South Carolina's courts apply to ascertain which state's law controls the validity and construction of insurance contracts at issue in this litigation; (a) the rule of *lex loci contractus;* or (b) the "location of the risk" methodology set forth in Section 193 of the *Restatement (Second) of Conflict of Laws?*

2. Does South Carolina Code § 38-61-10 apply to the insurance contracts at issue in this litigation, all of which were executed outside of South Carolina between parties not citizens of South Carolina?

## FACTS

From 1955 to 1977, Sangamo Weston, Inc., manufactured capacitors filled with dielectric fluid at is facility located in Pickens County, South Carolina. This fluid contained polychlorinated biphenylis ("PCB") which is a "hazardous substance" under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. § 9601, *et seq.* ("CERCLA"). Sangamo allegedly discharged wastewater containing PCB's into Town Creek and disposed of other waste containing PCB's at various other locations in Pickens County.

As a result, several property owners brought an action contending that the discharge of PCB-laden material caused diminution in the value of their property. This action was entitled *Carole M. Whitfield v. Sangamo Weston, Inc.* ("the Whitfield claims"). These property damage claims have been settled. The United States Environmental Protection Agency ("EPA") has notified Sangamo that they believe Sangamo is responsible for PCB contamination at ten waste sites in Pickens County, South Carolina. Sangamo may be required to undertake remedial action to clean these sites under the

CERCLA.

Sangamo seeks a declaratory judgment that the defendants, all of whom issued primary or excess liability insurance policies to Sangamo, must defend it against any action arising out of the CERCLA claims. Sangamo also seeks indemnification for any response costs incurred in the clean-up as well as for the property damage claims it has already paid in the *Whitfield* action.

All of the policies at issue provide property damage coverage for "all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property . . . caused by the accident." The central question is whether the CERCLA and *Whitfield* claims constitute claims for "damages" under the applicable policies. However, before this question may be decided, it must first be determined which state's law should be applied in interpreting these insurance contracts. Neither Sangamo nor the insurance companies are South Carolina citizens and the policies were executed outside South Carolina.

## DISCUSSION

1. What conflict of laws rule would South Carolina's courts apply to ascertain which state's law controls the validity and construction of insurance contracts at issue in this litigation; (a) the rule of *lex loci contractus;* or (b) the "location of the risk" methodology set forth in Section 193 of the *Restatement (Second) of Conflict of Laws?*

Historically, in insurance coverage disputes, South Carolina courts have followed the doctrine of *lex loci contractus,* and applied the law of the state where the contract was formed. *Jones v. Prudential Ins. Co.,* 210 S.C. 264, 42 S.E. (2d) 331 (1947). This rule was modified by a statute enacted in 1947 now codified at § 38-61-10 (1989). Where this statute applies it governs as South Carolina's rule of conflicts. As discussed in question two, based upon the facts presented to us, this statute is applicable and, thus, South Carolina law governs this dispute.

We note, however, even if the statute did not apply or if this statute were found not applicable based on information not presented to us, we would be unable to address the question of whether South Carolina would adopt the more modern

view of the Restatement based on facts presented. Under § 193 of the Restatement (Second) of Conflicts of Law (hereinafter "the Restatement"), the law of the place of the insured risk governs unless with respect to the particular issue, some other state has a more significant relationship to the transaction and the parties under the principles stated in § 6 of the Restatement. Section 188 of the Restatement provides the contacts to be taken into account in applying the principles of § 6. The list of contacts to be considered include the place of contracting, the place of negotiation, the place of performance, the location of the subject matter of the contract and the domicil, residence, nationality, place of incorporation and place of business of the parties. The states of these important contacts are not provided in this record. National Surety advocates the adoption of the analysis of the Restatement, however, discovery has not progressed to the point that where it can be determined where the contracts were formed.

Further, until the states with interest are identified, it is impossible for this court to determine whether a conflict question even exists. Section 193 provides that the law of the location of the risk will not apply if some other state has a more significant relationship *with respect to the particular issue.* Thus, under § 193 the particular issue which presents the conflict question must be presented. In order for this court to consider adopting § 193 of the Restatement, the facts advocating its adoption in a particular case must be sufficiently developed. This court will not issue advisory opinions and cannot alter precedent based on questions presented in the abstract.

2. Does South Carolina Code § 38-61-10 apply to the insurance contracts at issue in this litigation, all of which were executed outside of South Carolina between parties not citizens of South Carolina?

Section 38-61-10 of the South Carolina Code provides that "[a]ll contracts of insurance on property, lives, or interests in this state are considered to be made in the state . . . and are subject to the laws of this state." Sangamo contends its interest and property extend beyond the State of South Carolina. Additionally, these policies cover Sangamo's interest and property located throughout the country. However, Sangamo's interest and property located outside of this state are not at issue here. In this action Sangamo seeks cov-

erage solely for the liability it incurred due to its operations within the State of South Carolina. Therefore, as these policies relate to this action, they insure property and interest in this state.

Sangamo contends that this statute is inapplicable to policies issued outside the State of South Carolina. However, as we noted in *Johnston v. Commercial Travelers Mutual Accident Assoc. of America*, 242 S.C. 387, 131 S.E. (2d) 91 (1963) under this statute it is immaterial where the contract was entered into. Further there is no requirement that the policyholders or insurers be citizens of South Carolina. What is solely relevant is where the property, lives, or interests insured are located. We hold that § 38-61-10 is applicable to the insurance contracts at issue in this litigation. Therefore, under South Carolina conflict law, South Carolina substantive law governs this dispute.

Sangamo further argues this statute is unconstitutional. In *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 101 S. Ct. 633, 66 L. Ed. (2d) 521 (1981), the majority of the Supreme Court agreed that for a state's substantive law to be selected consistent with the Full Faith and Credit Clause and the Due Process Clause, the state must have a significant contact or significant aggregation of contacts, creating state interest, such that the choice of its law is neither arbitrary nor fundamentally unfair. *Id.* at 313-14 and 332, 101 S. Ct. at 640 and 650. We find that insuring property, lives and interests in South Carolina constitutes a significant contact with this state. South Carolina has a substantial interest in who bears the ultimate liability for operations conducted in this state which result in injury to South Carolina property and citizens. Although the parties are not residents of this state, both parties availed themselves of the law of South Carolina when they respectively provided or received insurance on interests located in this state. Accordingly, the application of South Carolina law is neither arbitrary nor fundamentally unfair.

GREGORY, C.J., and HARWELL and FINNEY, JJ., and BRUCE LITTLEJOHN, Acting Associate Justice, concur.