**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ROBERT M. BOWMAN; SHIRLEY
BOWMAN,
<u>Plaintiffs-Appellants,</u>

v.

THE CONTINENTAL INSURANCE
COMPANY, Subsidiaries of the
Continental Insurance Companies;          No. 99-2540
ROLLINS LEASING,
<u>Defendants-Appellees,</u>

and

MGA INSURANCE COMPANY,
INCORPORATED,
<u>Defendant.</u>

Appeal from the United States District Court
for the District of South Carolina, at Greenville.
Henry M. Herlong, Jr., District Judge.
(CA-98-3224-6-20)

Argued: June 7, 2000

Decided: August 18, 2000

Before MOTZ, TRAXLER, and KING, Circuit Judges.

_____

Affirmed in part, reversed in part, and remanded by unpublished per
curiam opinion.

_____

**COUNSEL**

**ARGUED:** Donald Roscoe Moorhead, DONALD R. MOORHEAD, P.A., Greenville, South Carolina, for Appellants. Roy Davis Howser, III, HOWSER, NEWMAN & BESLEY, L.L.C., Columbia, South Carolina; James D. Brice, GIBBES, GALLIVAN, WHITE & BOYD, P.A., Greenville, South Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Robert and Shirley Bowman appeal the district court's order of October 18, 1999, granting summary judgment in favor of Continental Insurance Company ("Continental") and Rollins Leasing Corporation ("Rollins"). For the reasons set forth below, we affirm in part, reverse in part, and remand for further proceedings.

I.

On October 23, 1996, Robert Bowman, a resident of Georgia, was injured in an automobile accident in Greenville County, South Carolina. In a negligence action in the District of South Carolina, Mr. Bowman and his wife obtained a judgment in excess of two million dollars against the at-fault driver. However, the negligent driver's liability insurance coverage was limited to $125,000, and the Bowmans collected that sum from the driver's insurer, Allstate Insurance Company.

Thereafter, on November 3, 1998, the Bowmans filed a declaratory judgment action seeking reformation of two automobile liability insurance policies held by Media Transport, Inc. ("Media Transport")

2

and Rollins to provide underinsured motorist ("UIM") coverage.[1] Tatham & Associates, Mr. Bowman's employer, had hired Media Transport to provide common carrier services. In turn, Media Transport had leased from Rollins the vehicle driven by Mr. Bowman at the time of the accident. Pursuant to the lease agreement (the "Media Transport-Rollins Lease"), Media Transport agreed to accept the automobile liability insurance coverage provided by Rollins. Rollins secured such coverage under two automobile liability policies issued by Continental, specifically Policy number SRB 9561300 ("Policy 1300") and Policy number SRB 3552846 ("Policy 2846"). Neither of these policies expressly provided UIM coverage; indeed, both denied such coverage to the extent permitted by law.

In their complaint, the Bowmans alleged that Continental violated South Carolina law by failing to make a "meaningful offer" to provide UIM coverage. Accordingly, they asserted that, as a matter of law, Continental's policies had to be reformed and Continental was obliged to provide UIM coverage. In response, Continental maintained that Georgia law, which merely requires the named insured to reject UIM coverage in writing, governed the interpretation of the Media Transport-Rollins Lease. Asserting that Rollins rejected UIM coverage in writing under both Continental policies, Continental moved for summary judgment. By order of October 18, 1999, the district court granted Continental's motion. From that adverse judgment, the Bowmans appeal.[2]

II.

We review the district court's grant of summary judgment de novo,

_____

[1] UIM coverage obligates an insurer to pay the insured all sums -- up to the limits of the policy in question -- which the insured is legally entitled to recover as damages from the negligent owner or operator of an underinsured motor vehicle. See Ga. Code Ann. § 33-7-11(a)(1) (1999).
[2] In their complaint, the Bowmans also sought reformation of an insurance policy provided to Media Transport by MGA Insurance Co. ("MGA"). By order of October 19, 1999, the district court granted MGA's motion for summary judgment. After filing their notice of appeal, the Bowmans moved to dismiss MGA from this appeal. On May 23, 2000, we granted their motion and dismissed MGA from this appeal.

viewing all facts and inferences in the light most favorable to the non-moving party. Food Lion, Inc. v. S.L. Nusbaum Ins. Agency, Inc., 202 F.3d 223, 227 (4th Cir. 2000). In this review, we are mindful that summary judgment is appropriate "where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." Semple v. City of Moundsville, 195 F.3d 708, 712 (4th Cir. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

III.

A.

The resolution of this appeal first requires that we determine whether the insurance policies are governed by the law of South Carolina, as the Bowmans contend, or by the law of Georgia, as Continental and Rollins maintain. If the Bowmans are correct and South Carolina law applies, Continental would have been required to make a meaningful offer of UIM coverage. See S.C. Code Ann. § 38-77-160. That is, section 38-77-160 requires automobile insurance carriers to "offer, at the option of the insured, uninsured motorist coverage up to the limits of the insured's liability coverage . . . ." In State Farm Mut. Auto. Ins. Co. v. Wannamaker, 354 S.E.2d 555 (S.C. 1987), the court set forth four requirements an insurance carrier must satisfy to establish an effective offer of UIM coverage:

> (1) provide commercially reasonable notification;
>
> (2) specify the limits of optional coverage and not merely offer additional coverage in general terms;
>
> (3) intelligibly advise the insured of the nature of the optional coverage; and
>
> (4) convey to the insured that optional coverages are available for an additional premium.

Id. at 556. Under South Carolina law, the failure to satisfy any one of these four prongs vitiates the offer of UIM coverage and requires reformation of the insurance policy to include UIM coverage to the

4

limits of liability. See Ackerman v. Travelers Indem. Co., 456 S.E.2d 408, 411 (S.C. Ct. App. 1995).

Conversely, Continental maintains that Georgia law governs our interpretation of these policies. Under Georgia law, an insurer is not statutorily required to make a meaningful offer of UIM coverage. Rather, to be relieved of its responsibility to provide such coverage, the insurer simply must demonstrate that the named insured rejected UIM coverage in writing. Ga. Code Ann. § 33-7-11(a)(3) (1999).

B.

A federal court sitting in diversity must apply the choice of law rules of the forum state. See Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941). Thus, in resolving this choice of law question, the district court correctly looked to South Carolina's choice of law rules. In insurance coverage disputes, South Carolina courts have historically followed the doctrine of lex loci contractus, applying the law of the state where the insurance contract was formed.[3] Jones v. Prudential Ins. Co., 42 S.E.2d 331, 333 (S.C. 1947). See Unisun Ins. Co. v. Hertz Rental Corp., 436 S.E.2d 182, 184 (S.C. Ct. App. 1993) (citation omitted) ("A contract of insurance is governed by the law of the state in which application for insurance was made, the policy delivered, and the contract formed.").

This general rule was modified by statute in 1947, now codified as S.C. Code Ann. § 38-61-10 (Law. Co-op. 1976). Section 38-61-10 provides:

_____

[3] Of course, the parties may contract around the general choice of law rules by expressly selecting the law to govern their dealings. See Unisun Ins. Co. v. Hertz Rental Corp., 436 S.E.2d 182, 184 (S.C. Ct. App. 1993) (recognizing that choice of law rules will not apply if "the parties agree to a different rule").

Here, the Bowmans assert that Policy 1300 and Policy 2846 both contain choice of law provisions providing for the application of South Carolina law. We find these assertions untenable, however, and we agree with the district court that the provisions relied upon by the Bowmans cannot reasonably be construed as "choice of law" provisions. J.A. 511.

>All contracts of insurance on property, lives, or interests in this State are considered to be made in the State and all contracts of insurance the applications for which are taken within the State are considered to have been made within this State and are subject to the laws of this State.

S.C. Code Ann. § 38-61-10.

In support of their position, the Bowmans rely on the Supreme Court of South Carolina's decision in Sangamo Weston Inc. v. Nat'l Sur. Corp., 414 S.E.2d 127 (S.C. 1992). In Sangamo Weston, insurance policies covering a South Carolina manufacturing facility were executed outside South Carolina by parties not citizens of South Carolina. When the insured sought a declaratory judgment to determine the scope of insurance coverage, the first issue to be resolved was "which state's law should be applied in interpreting these insurance contracts." Id. at 129. Critical to this determination was the fact that the insured "property" at issue -- Sangamo Weston's manufacturing facility -- was located in South Carolina. Id. at 130. Thus, insofar as "both parties [although not residents of South Carolina] availed themselves of the law of South Carolina when they respectively provided or received insurance on interests located in this state," id. at 131, the court, pursuant to section 38-61-10, held that South Carolina law applied.

According to the Bowmans, because the automobile collision occurred in South Carolina, section 38-61-10 and Sangamo Weston mandate the application of South Carolina law. However, this argument has been rejected in South Carolina. In Unisun, 436 S.E.2d 182, the plaintiffs were injured in an automobile collision in South Carolina, and they subsequently filed a declaratory judgment action seeking a determination of the scope of insurance coverage. In resolving the choice of law question, the court recognized that the insurance policy at issue had been executed in New York by "a resident of New York with a corporation doing business in New York." Id. at 184. Moreover, the policy insured an automobile registered in New York. Id. Under these facts, the court found section 38-61-10 -- and correspondingly, South Carolina law -- inapplicable, since "at the time the contract was made, the property and interests insured were in the State of New York." Id. at 184 n.1 (emphasis added).

6

This case is virtually indistinguishable from Unisun. The insured vehicle was licensed and garaged in Georgia; Media Transport was headquartered in Georgia; and Mr. Bowman was a resident of Georgia at the time of the accident. The only nexus with South Carolina is the location of the automobile collision, which the Unisun decision indicates is insufficient, standing alone, to trigger section 38-61-10. Accordingly, we agree with the district court that South Carolina law is inapplicable to this dispute.

C.

Besides South Carolina, the only other assertion as to the governing law made by the parties was Continental's claim that the law of Georgia controlled; thus, the district court assumed "that Georgia law is the applicable state law." J.A. 513. We see no reason to disturb this determination, and we therefore conclude that Georgia law governs these insurance policies.[4]

IV.

A.

Under Georgia law, the owner of a motor vehicle must carry a minimum amount of liability insurance. Ga. Code Ann.§§ 33-34-3, 33-34-4 (1999). As a general rule, no automobile liability policy "shall be issued or delivered" unless it contains UIM coverage. Ga. Code Ann. § 33-7-11(a)(1). However, section 33-7-11(a)(3) provides an important exception to this general rule: "The coverage required

_____

[4] Our determination that Georgia law applies renders moot the parties' arguments regarding whether Policy 2846 is a primary or excess policy. Under South Carolina law, "[n]o uninsured or underinsured motorist coverage need be provided in this State by any excess or umbrella policy of insurance." S.C. Code Ann. § 38-77-161 (emphasis added). Thus, if South Carolina law were to apply, and if Policy 2846 was determined to be an excess policy, then Continental would be relieved of its duty -- under South Carolina law -- to make a "meaningful offer" of UIM coverage. However, because we agree with the district court's conclusion that Georgia law applies, this primary-excess distinction is irrelevant and therefore fails to create a genuine issue of material fact.

7

under paragraph (1) of this subsection shall not be applicable where any <u>insured named</u> in the policy shall reject the minimum coverage in writing." <u>Id.</u> (emphasis added).

In other words, as section 33-7-11(a)(3) makes clear, UIM coverage is not mandatory and therefore can be waived or rejected in writing by the named insured.[5] As the Court of Appeals of Georgia recognized in <u>Nat'l Union Fire Ins. Co. v. Johnson</u>, 357 S.E.2d 859 (Ga. Ct. App. 1987), a written rejection "complies with the only statutory requirement for rejection of uninsured motorist coverage, namely, that such rejection be in writing. If the legislature had intended any further formal requisites for the rejection of uninsured motorist benefits, we must presume it would have specified them." <u>Id.</u> at 860 (internal citations omitted). Although the court's literal language indicates that "the only statutory requirement" for rejecting UIM coverage is that the rejection be in writing, it is clear from the statutory framework and the remainder of the <u>Johnson</u> opinion that one additional requirement remains: the rejection must be made by the policy's named insured. This additional requirement controls our disposition of this appeal.

B.

Continental (the insurer) maintains that Rollins properly rejected UIM coverage in writing. In support of this argument, Continental initially directs our attention to the "Georgia Automobile Supplemental Application" filed by Rollins with respect to Policy 1300. In this application, signed by Rollins's Risk Manager Lynn Moroz, the box labeled "I reject uninsured/underinsured motorists bodily injury and property damage coverage entirely" is checked with three typewritten "X's". J.A. 479. Continental asserts that this application suffices to

_____

[5] Moreover, § 33-7-11(a)(3) further provides that UIM coverage "need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer." Put simply, if the named insured has exercised its option to reject UIM coverage, the insurer is under no further obligation to offer the coverage, absent a request, for the life of the policy. <u>Merastar Ins. Co. v. Wheat</u>, 469 S.E.2d 882, 883 (Ga. Ct. App. 1996).

8

reject UIM coverage under Georgia law, relying on <u>Blalock v. Southern Ins. Co.</u>, 349 S.E.2d 32, 33 (Ga. Ct. App. 1986), in which the court held that a checked "rejection" box, coupled with the signature of the insured, operated as a legally binding rejection of UIM coverage.

Next, Continental relies on <u>Johnson</u>, 357 S.E.2d at 860, for the proposition that a written communication -- from the insured to the insurer -- expressing a desire to reject UIM coverage, operates as a valid rejection under section 33-7-11(a)(3). In this regard, Continental points to various letters signed by John P. Polakvic, Rollins's Director of Risk Management, purporting to reject UIM coverage under both Policy 1300 and Policy 2846. The district court agreed with Continental, concluding that "[b]ecause the Bowmans do not counter the evidence offered by Continental that the written-rejection requirement was met, the Bowmans cannot succeed on their claim to reform the polic[ies]." J.A. 515.

C.

With respect to Policy 1300, we agree with the district court that the "Georgia Automobile Supplemental Application," and the letters signed by Mr. Polakvic on behalf of Rollins, were sufficient to reject UIM coverage pursuant to § 33-7-11(a)(3): Rollins was the "named insured" in Policy 1300 and these documents undoubtedly qualify as written rejections of UIM coverage.

However, this does not resolve whether Rollins lawfully rejected UIM coverage under Policy 2846. Indeed, the declaration page of Policy 2846 does not identify Rollins as a named insured; rather, it identifies that policy's named insured as "Certain Lessees of Rollins Leasing Corp." J.A. 347. Furthermore, the policy's definition of "Insured" does not include Rollins, which is explicitly identified therein as the "Lessor" rather that the "Lessee."[6] Thus, the Bowmans contend

_____

[6] Policy 2846 defines "Insured" as follows:

> [A]ny person or organization who has been furnished a vehicle under a written lease or rental agreement between such person or organization (hereinafter called the Lessee) and Rollins Leasing

9

that Rollins was not the named insured in Policy 2846 and therefore could not have effectuated a lawful rejection of UIM coverage under that policy.

In interpreting insurance contracts, courts construing Georgia law have consistently recognized the literal meaning of the term "named insured." Indeed, the term has been narrowly construed to refer solely to a party who has been designated by name in the insurance policy -- without qualification -- as an insured. See e.g., Griffin v. State Farm Mut. Auto. Ins. Co., 199 S.E.2d 101, 104 (Ga. Ct. App. 1973); Cotton States Mut. Ins. Co. v. Bowden, 221 S.E.2d 832, 833 (Ga. Ct. App. 1975) (recognizing that the "literal meaning" of the term "named insured" must be attributed to it).

As noted, Policy 2846 designated the named insured as "Certain Lessees of Rollins Leasing Corp." As a general proposition, such designations must be accorded their ordinary meaning. As the court in Lester v. Great Central Ins. Co., 226 S.E.2d 149 (Ga. Ct. App. 1976), observed:

> Where the contract is unambiguous, it must be construed to mean what it says. This rule applies to language limiting coverage. Of course if the contract is ambiguous the ambiguity is to be resolved against the insurer. But ambiguity is not to be created by lifting a clause or portion of the contract out of context. The natural, obvious meaning is to be preferred over any curious, hidden meaning which nothing but the exigency of a hard case and ingenuity of a trained and acute mind would discover.

_____

> Corp. (hereinafter called the Lessor) providing for the exclusive use of such vehicle by the Lessee and such written lease or rental agreement requires the Lessor to provide insurance, but such Lessee shall only be an insured to the extent of the limits, terms and conditions set forth in the whole of such written lease or rental agreement.

J.A. 349.

10

Id. at 150 (internal citations omitted). To the extent that Policy 2846's named insured designation contained "no ambiguity or deceptive verbiage," we must construe the phrase to have its literal meaning. Bowden, 221 S.E.2d at 833 (citation omitted). The literal meaning of "Certain Lessees of Rollins Leasing Corp.," plainly does not encompass Rollins itself. Although Rollins negotiated both insurance policies with Continental, and both policies apparently comprised a portion of Rollins's overall insurance plan, the fact remains that Rollins is not a named insured on Policy 2846.[7]

We therefore conclude that the Bowmans are entitled to proceed with their claim for reformation of Policy 2846, and in this regard, we must reverse the district court's entry of summary judgment in favor of Continental.

V.

The Bowmans' complaint also included a claim against Rollins. In its October 18, 1999, order, the district court granted Rollins's motion for summary judgment, noting that the Bowmans "apparently concede that there is no claim against Rollins by virtue of their failure to address this issue." J.A. 516. On appeal, the Bowmans fail to assert any theory justifying possible relief against Rollins. Therefore, we agree that the district court properly granted judgment in favor of Rollins, and we also affirm that aspect of the district court's ruling.

_____

[7] Even assuming there was no valid rejection, Continental maintains that UIM coverage was waived by Media Transport. In support of this argument, Continental points to Paragraph 6 of the Rollins-Media Transport Lease, which provides:

> The insurance shall have limits as indicated on the Lease(s) and shall include any mandatory No Fault, Uninsured Motorist, Underinsured Motorist and Personal Injury Protection required by law and in the minimum amounts required by law.

J.A. 48. This argument is without merit. It would require considerable imagination to construe the provision relied upon by Continental as an unequivocal waiver of UIM coverage. Simply put, Paragraph 6 is not the "clear, unambiguous, and capable of only one reasonable interpretation" waiver required under Georgia law. See Nolley v. Maryland Cas. Ins. Co., 476 S.E.2d 622, 625 (Ga. Ct. App. 1997).

11

VI.

For the foregoing reasons, we affirm the district court's grant of
summary judgment with respect Policy 1300 and the Bowmans'
claims against Rollins. However, we reverse its judgment as to Policy
2846 and remand this case for further proceedings.

AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

12