# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Tyrin S. Young, Sr., Individually, as PR of the Estates of
Tyrin Young, Jr. and Micah A. Young and as Legal
Guardian of J.Y, a minor under the age of 14, Appellant,

v.

USAA General Indemnity Company, Respondent.

Appellate Case No. 2019-000009

---

Appeal From Greenville County
Perry H. Gravely, Circuit Court Judge

---

Opinion No. 5899
Heard November 10, 2021 – Filed March 9, 2022

---

## REVERSED AND REMANDED

---

Richard K. Allen, III, and Russell F. Guest, both of Guest
& Brady, LLC, of Greenville, for Appellant.

Julie Coleman Hunter, of Clawson & Staubes, LLC, of
Columbia, and Patrick L. Still, III, of Clawson &
Staubes, LLC, of Greenville, both for Respondent.

---

**HEWITT, J.:** A South Carolina statute mandates that insurance contracts covering "property, lives, or interests in this State are considered to be made in the State." S.C. Code Ann. § 38-61-10 (2015). This case calls on us to decide whether the statute applies to a particular California automobile policy. We find it does and reverse the circuit court's decision to the contrary.

The circuit court found the statute did not apply because the policy's principal purpose was to insure a vehicle that had not been to South Carolina for several years. Even though the vehicle had been absent from this State for a long time, the policy also insured lives and interests here—there was more to it than liability coverage for a car. For that reason, we reverse the grant of summary judgment to USAA General Indemnity Company (USAA).

**FACTS**

The background is somewhat complicated because the policy was issued to a military household that moved several times. This dispute stems out of a tragic wreck that occurred while Kamika Young was driving in South Carolina in 2015. She and her three children were living in South Carolina and had their legal residence here. Two of the children did not survive the wreck. The wreck occurred while Mrs. Young and her children were travelling in a vehicle the family owned.

The vehicle was taxed and titled in South Carolina. The USAA insurance policy noted the vehicle was "principally garaged" in South Carolina. The policy was designated a "South Carolina Auto Policy."

Mr. Young (the plaintiff here) was also a legal resident of South Carolina, but the wreck happened while he was deployed to Guam. He had the Young family's other vehicle with him. That vehicle—though located in Guam—was insured by USAA under a policy listing the vehicle as principally garaged in California. The Young family had lived in California shortly before Mr. Young's deployment. Even so, the vehicle was taxed and titled in South Carolina. Also, the policy's "California Evidence of Financial Responsibility" listed Mrs. Young and her South Carolina address as the name and address of the insured.

Mr. and Mrs. Young are from South Carolina and were married here. The parties stipulated that Mr. Young always considered himself a citizen and resident of South Carolina even though he was stationed in other states while in the Navy. The parties also stipulated that the Youngs paid their income taxes in South Carolina regardless of where they were living and that Mrs. Young and the children were physically residing in South Carolina at the time of the wreck. Mrs. Young and the children moved back to South Carolina from California only a few months before the wreck. They moved in anticipation of Mr. Young's deployment to Guam. The deployment was slated to last for two years.

The California policy does not contain Underinsured Motorist (UIM) coverage in a form that South Carolina's statutory law would recognize. Our insurance code

explains that UIM provides coverage when the insured suffers damages that exceed the liability limits of the at-fault motorist. S.C. Code Ann. § 38-77-160 (2015 & Supp. 2020). The California policy includes a coverage titled "uninsured motorist" coverage that also applies in some *under*insured situations, but not all.

Mrs. Young was at fault in the 2015 wreck, and USAA paid Mr. Young the liability and UIM limits for the vehicle Mrs. Young was driving. Mr. Young claims damages exceeding the funds already paid. USAA has declined to pay the Youngs any benefits under the California policy, citing the policy's language.

The Youngs brought this suit seeking a declaration that the California policy insured property, lives, or interests in South Carolina. The circuit court granted USAA's motion for summary judgment, emphasizing that though the vehicle in Guam had "financial ties" to South Carolina, it was clear the vehicle was not involved in the wreck and had not been to South Carolina for several years.

**ANALYSIS**

The standard of review for a summary judgment is familiar and need not be repeated here. More importantly, there are no factual disputes in the case as it comes to us. The issue is the purely legal one of whether the circuit court correctly concluded the California policy did not insure property, lives, or interests in South Carolina. We review legal issues de novo. *Town of Summerville v. City of North Charleston*, 378 S.C. 107, 110, 662 S.E.2d 40, 41 (2008).

We mentioned the key statute at the beginning—section 38-61-10. It says an insurance contract is considered made in South Carolina if the contract insures lives, property, or interests here. Our supreme court has explained the statute reflects the Legislature's policy judgment that insurance contracts meeting the statute should be subject to South Carolina's insurance laws. *Johnston v. Com. Travelers Mut. Acc. Ass'n of Am.*, 242 S.C. 387, 392-93, 131 S.E.2d 91, 94 (1963). Policyholders need not be South Carolina citizens—the court has said the key fact is "where the property, lives, or interests insured are located." *Sangamo Weston, Inc. v. Nat'l Sur. Corp.*, 307 S.C. 143, 149, 414 S.E.2d 127, 130 (1992) (statute applied to policy covering manufacturing facility in South Carolina). Still, the court has emphasized the statute reflects South Carolina's "manifest" interest in protecting the rights of its citizens. *Johnston*, 242 S.C. at 393, 131 S.E.2d at 94.

This case is controlled by the fact that the California policy provided more than just liability coverage for a vehicle that was physically located in Guam. In addition to the car, the California policy insured the Young family. The policy provided

uninsured (UM) motorist coverage protecting each of the Youngs, regardless of whether they were occupying the insured vehicle. This coverage allowed the Youngs to recover damages from USAA for bodily injury caused by an uninsured motorist. This tracks a principle that is familiar to South Carolinians experienced with insurance laws: liability coverage follows the vehicle, but UM and UIM follow the insured. *See Burgess v. Nationwide Mut. Ins. Co.*, 373 S.C. 37, 41, 644 S.E.2d 40, 42 (2007) (recognizing this general rule).

The Youngs were South Carolina citizens, and four of them—Mrs. Young and the three children—were physically residing in South Carolina at the time of the wreck. There are exclusions in the California policy reducing the availability of UM coverage in various circumstances, but still, the fact that the California policy insured Mrs. Young and her children while they were living in South Carolina means the statute is satisfied. The statute is triggered when an insurance policy covers lives and interests here, and there is no doubt this policy did so.

The circuit court emphasized that the California policy covered a vehicle that was not involved in the wreck and that had not been to South Carolina in several years. USAA focuses on the same thing here.

The point is fair, but we think a hypothetical shows why it does not undercut our ruling. Imagine a case with the same facts, except the vehicle located in Guam is covered by a South Carolina policy rather that a California one. Unless the Youngs validly rejected UIM, they would be able to "stack" until they had exhausted all available coverage or recovered all of their damages. *See Burgess*, 373 S.C. at 41-42, 644 S.E.2d at 42-43 *and S.C. Farm Bureau Mut. Ins. Co. v. Mooneyham*, 304 S.C. 442, 444-46, 405 S.E.2d 396, 397-98 (1991) (UIM statute does not allow prohibitions on stacking except in situations not relevant here). The vehicle's location would not defeat the fact that the policy was a South Carolina policy. This points us right back to the statute, which says an insurance policy is a South Carolina policy as long as it insures lives or interests here.

The circuit court also compared this to situations where the vehicle's sole connection to South Carolina was that the wreck occurred here. *See, e.g., Bowman v. Cont'l Ins. Co.*, 229 F.3d 1141 (4th Cir. 2000) (Georgia resident with Georgia policy involved in wreck in South Carolina). The comparison does not hold. This policy insured a vehicle that was registered in South Carolina, taxed in South Carolina, and owned by a South Carolina citizen. More importantly, the policy also covered lives and interests in South Carolina, as described above.

The dissent focuses on the policy's property coverage, but that coverage is not in play here, and the statute does not ask us to look at which of several coverages may have been the "main" one the policy insured. The statute applies to policies covering property, lives, or interests in South Carolina. We must give meaning to all of those terms, not just some of them. And while we appreciate that some federal decisions have endeavored to apply this statute to complicated facts, those decisions do not bind us, and none of them are fairly comparable to the situation here. *See, e.g., Russell v. McGrath*, 135 F. Supp. 3d 427, 432 (D.S.C. 2015) (explaining the court would not "convert the automobile insurance policy of every out-of-state student at each of our in-state universities" even though doing so would potentially protect South Carolina citizens).

Finally, it bears repeating that this case is light years different from the cases where a "subject" of the insurance contract—the lives, property, or interests—just happened to be in South Carolina when the incident triggering coverage occurred. We will grant that this policy said it covered a vehicle garaged in California (even though it was to be in Guam for two years), but it was a South Carolina vehicle, owned by South Carolina residents, and several of them were *in fact* living here when they were injured. If the key question is whether South Carolina has a substantial connection to this policy, we think the answer is plainly "yes."

## CONCLUSION

We reverse the summary judgment granted to USAA. The case is remanded for proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

**HILL, J., concurs.**

**KONDUROS, J., dissenting:** While recognizing the tragic circumstances of this case, my analysis of the applicable statute and relevant case law leads me to the conclusion section 38-61-10 does not apply to the California policy covering the vehicle in Guam, a Kia Spectra (the Kia policy). Therefore I respectfully dissent.

As explained by the majority, Tyrin Young was an active member of the United States Navy. He and his wife, Kamika, had three young children. While stationed in California, Tyrin secured a California USAA insurance policy on a 2006 Kia Spectra and a California USAA insurance policy on a 2002 Ford Expedition. In mid-2014, Kamika and the children returned to Greenville where the couple was originally from to be close to family. While in Greenville, Kamika drove the

family's Expedition, and the Youngs changed the Expedition policy to a South Carolina USAA insurance policy. Tyrin remained in California for a few months pending his upcoming transfer to Guam. He took the Kia with him to Guam and did not change its insurance policy. The accident involving the Expedition occurred in August of 2015.

USAA tendered the insurance proceeds under the South Carolina policy covering the Expedition. Tyrin then filed a declaratory judgment action seeking a ruling the Kia policy should be subject to South Carolina law pursuant to section 38-61-10. Under South Carolina law, the Kia policy would be reformed to include UIM coverage[1] and would permit that UIM coverage to be stacked even though California law prohibits stacking.[2]

---

[1] South Carolina law requires all insurers to make a meaningful offer of UIM coverage. If such offer was not made, the policy will be reformed to provide UIM coverage. *See Progressive Cas. Ins. Co. v. Leachman*, 362 S.C. 344, 349, 608 S.E.2d 569, 571 (2005) ("If the insurer fails to comply with its statutory duty to make a meaningful offer to the insured, the policy will be reformed, by operation of law, to include UIM coverage up to the limits of liability insurance carried by the insured." (quoting *Butler v. Unisun Ins. Co.*, 323 S.C. 402, 405, 475 S.E.2d 758, 760 (1996)).

[2] California statute states:

> Regardless of the number of vehicles involved[,] whether insured or not, persons covered, claims made, premiums paid or the number of premiums shown on the policy, in no event shall the limit of liability for two or more motor vehicles or two or more policies be added together, combined, or stacked to determine the limit of insurance coverage available to injured persons.

Cal. Civ. Code § 11580.2(q).

The Kia was purchased, titled, and taxed in South Carolina. The Kia was originally insured under a South Carolina policy. Once the parties moved to Virginia in 2008, the Kia was not physically present in South Carolina again, and Tyrin sold it after the accident while still stationed in Guam. Both Tyrin and Kamika were born in and graduated from high school in South Carolina and held South Carolina driver's licenses. They only left South Carolina as a result of Tyrin's service in the military, and both considered South Carolina to be their permanent residence.

Tyrin argued the Kia had sufficient contacts with South Carolina to bring the Kia policy within the confines of the statute or in the alternative, the Kia policy insured lives and interests in South Carolina. The circuit court determined the Kia did not constitute "property, lives, or interests in this State" because the Kia had not physically been present in the state since 2008 or 2009. The circuit court further concluded any additional analysis regarding the contacts with South Carolina was unnecessary. Tyrin appealed that ruling to this court.

The majority asserts the Kia policy falls within the parameters of section 38-61-10 because it insures lives and interests in South Carolina. While I appreciate the majority's viewpoint, I struggle to reconcile this position with what I view as the plain language of the statute. The statute applies to "contracts of insurance *on* property, lives, *or* interests in this [s]tate." S.C. Code Ann. §38-61-10 (emphases added). The disjunctive "or" as used in the statute is important in analyzing this case. The word "or" indicates we should evaluate the statute's application to property, lives, or interests separately. *See Brewer v. Brewer*, 242 S.C. 9, 14, 129 S.E.2d 736, 738 (1963) ("The word 'or' used in a statute, is a disjunctive particle that marks an alternative. The word 'or' used in a statute imports choice between two alternatives and as ordinarily used, means one or the other of two, but not both." (citations omitted)). While an automobile policy incidentally benefits the lives of drivers and passengers in automobiles, to construe it as "a contract of insurance *on . . . lives*," is strained.[3] *See Hitachi Data Sys. Corp. v. Leatherman*, 309 S.C. 174, 178, 420 S.E.2d 843, 846 (1992) (noting the words of a statute "must

---

[3] In *Heslin-Kim v. CIGNA Group Insurance*, 377 F. Supp. 2d 527, 532 (D.S.C. 2005), the court concluded section 38-61-10 governed a Georgia *life insurance policy* when the insured was a seven-year resident of South Carolina, died in South Carolina and lived and paid premiums in South Carolina for seven years prior to his death, and his estate was probated in South Carolina.

be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand its operation").

The majority's interpretation of the statute essentially ignores the property component of the Kia policy. The seminal case interpreting and discussing the application of section 38-61-10 is *Sangamo Weston, Inc. v. Nat'l Sur. Corp.*, 307 S.C. 143, 414 S.E.2d 127 (1992). That case involved an insurance policy on a manufacturing facility in South Carolina. *Id*. at 146, 307 S.E.2d at 129. When the court stated "insuring property, lives *and* interests in South Carolina constitutes a significant contact with this state," it had already recognized the subject property was located in South Carolina and therefore the property policy touched lives and interests in the state as well. *Id*. at 149, 307 S.E.2d at 131. As *Sangamo Weston* indirectly acknowledged, a property policy may be viewed as covering more than just property. However, to evaluate the Kia policy as one *on lives* while ignoring the status of the property that gave rise to the contract is, in my opinion, ill-conceived. I do not believe the General Assembly intended to interfere to that degree with another state's management of its insurance scheme in the interest of protecting South Carolina citizens.[4] Therefore, I believe the only reasonable interpretation of section 38-61-10 is that the Kia policy is a policy on property that indirectly insures lives and interests in the limited context of automobile accidents.

---

[4] *Johnston v. Commercial Travelers Mutual Accident Ass'n of America*, 242 S.C. 387, 393, 131 S.E.2d 91, 94 (1963), suggests the burgeoning mail order insurance business was the impetus for such legislation to prevent South Carolina citizens from securing insurance on their property, lives, or interests, only to have another state's law apply solely because the contract was formed outside the state. The opinion noted "[i]n recent years there has been a tremendous growth in mail order insurance business. Many companies doing business in this manner maintain an office and own property only in the state where they are incorporated but insure risks on a nationwide basis." *Id*. (quoting *Ross v. Am. Income Life Ins. Co.*, 232 S.C. 433, 436, 102 S.E.2d 743, 744 (1958)).

Because I view the Kia policy as one on property, I would examine the issue from that perspective to see if section 38-61-10 might yet apply. In other words, is the Kia policy a contract on property *in this state*? As already mentioned, the seminal case interpreting and discussing the application of section 38-61-10 is *Sangamo Weston*. Sangamo Weston owned a manufacturing facility located in South Carolina. *Id.* at 146, 414 S.E.2d at 129. The insurance policy covering the facility was formed outside South Carolina and none of the parties were South Carolina citizens. *Id.* at 147, 414 S.E.2d at 129. The court determined section 38-61-10 applied concluding, "under [38-61-10] it is immaterial where the contract was entered into. Further there is no requirement that the policyholders or insurers be citizens of South Carolina. *What is solely relevant is where the property, lives, or interests insured are located.*" *Id.* at 149, 414 S.E.2d at 130 (emphasis added). Then, the court addressed the constitutionality of the statute and noted the pertinent inquiry is whether "a significant contact or significant aggregation of contacts" with South Carolina exists. *Id.* at 149, 414 S.E.2d at 131.

Tyrin argues the contacts with South Carolina in this case are so numerous section 38-61-10 should apply. I agree with the contention that the cases analyzing section 38-61-10 in the context of an automobile policy focus heavily on contacts. For example, *Russell v. McGrath*, 135 F. Supp. 3d 427 (D.S.C. 2015), involved an automobile accident in South Carolina. The driver was a University of South Carolina student, Brian. *Id.* at 428-29. Brian was a Connecticut citizen, driving a car tagged, taxed, and insured in Florida and owned by his parents who owned a home in Florida. *Id.* at 429. The court, referencing *Sangamo Weston*, noted, "A Florida vehicle driven by a Connecticut citizen is fundamentally different than a South Carolina manufacturing facility or the life of a South Carolina citizen." *Id.* at 432. In declining to reform the Florida policy, the court explained,

> In late 2008, during Brian's sophomore year, his parents purchased a second home in Florida. At the time, they also purchased the Dodge sedan for Brian. They purchased the vehicle in Florida from a Florida dealer. The vehicle was registered in the state of Florida with a Florida license plate. Evelyn [Brian's mother] paid taxes on the vehicle in the state of Florida. The Liberty policy was sold to Evelyn, the named insured, through a Florida sales office for a vehicle primarily garaged in Florida. Liberty mailed the policy to Evelyn at her residence in Connecticut.

> At the time of his death, Brian was a citizen of the state of Connecticut. His estate was probated there in the Fairfield Probate District. Brian's voter registration card was issued in the state of Connecticut. Brian was licensed to drive by the state of Connecticut. His parents paid out of state tuition to the University of South Carolina every semester he was there. Brian never owned property, paid taxes, nor was employed in the state of South Carolina. According to Evelyn, he planned to return home to Connecticut following the completion of his education.

*Id.* at 429.

The *Russell* court did not discuss at length the physical location of the vehicle. However, the automobile had a regular and significant physical presence in South Carolina even though that presence was not sufficient in and of itself to warrant reformation of the policy. *See id.* at 432 (recognizing the vehicle in question was in South Carolina when Brian attended classes during the fall and spring semesters and at the time of the accident).

The *Russell* opinion relied in large part on a prior unpublished opinion considering an automobile policy, *Yeager v. Allstate Ins. Co.*, No. 9:09-860-MBS, 2010 WL 680429 (D.S.C. Feb. 23, 2010). In *Yeager*, the policy involved was a Georgia policy issued to a Georgia resident who resided part-time in South Carolina at her boyfriend's residence, worked as a bookkeeper for clients in South Carolina, and filed South Carolina income taxes. *Id*. at *1. She was driving from a client's business in Beaufort County, South Carolina, to her boyfriend's home, when the accident occurred. *Id*. Again, the court focused heavily on contacts with South Carolina. *Id*. at *5. Just as in *Russell*, the car was physically located in South Carolina at the time of the accident and had a significant physical presence in South Carolina overall. Again, the court concluded section 38-61-10 did not apply.

After examining these and other cases, I am not persuaded the Kia constitutes property in South Carolina. Mere physical presence of a vehicle in South Carolina at the time of the accident is insufficient to trigger section 38-61-10.[5] Under

---

[5] *See Unisun Ins. Co. v. Hertz Rental Corp.*, 312 S.C. 549, 552 n.1, 436 S.E.2d 182, 184 n.1 (Ct. App. 1993) (indicating section 38-61-10 would not be triggered

*Russell* and *Yeager v. Allstate*, part-time physical presence is also insufficient in the absence of substantial other contacts.  In the present case, contacts with South Carolina are significant.  However, the complete and total absence of the Kia in South Carolina is not immaterial.  The focus on contacts is a part of the overall analysis in determining whether 38-61-10 applies and whether its application runs afoul of the Constitution.  *See Sangamo Weston*, 307 S.C. at 149, 414 S.E.2d at 131 (discussing the need for contacts to be significant in order for the application of a state's choice of law provisions to be neither arbitrary nor fundamentally unfair).  However, a contacts analysis cannot completely displace the location requirement as would be the case here.

As the majority notes, the legislature's intent with section 38-61-10 is to protect the rights of South Carolina citizens, which would include the Young family.  *See Heslin-Kim*, 377 F. Supp. 2d at 531-32 ("The South Carolina Supreme Court has emphasized that South Carolina's statutory choice-of-law provision applicable to contracts of insurance on property, lives, and interests located within the state was intended to further South Carolina's interest in protecting the rights of its citizens." (quoting *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750, 754 (11th Cir. 1998))).  However, the desire to protect the interests of citizens cannot supplant the plain language of the statute as written or the case law interpreting it. *See Russell*, 135 F. Supp. 3d at 432-33 ("While not unsympathetic to the fact that [converting a Florida policy to a South Carolina policy] may serve to protect the interests of South Carolina citizens—such as the three passengers killed in [the accident]—this [c]ourt must nevertheless defer that decision to the South Carolina General Assembly.").

I note this case involves a military family.  According to the record, the only reason the Kia was *not* physically present in South Carolina was because of Tyrin's military assignments.  However, the statute as written does not allow for an

---

with respect to a policy formed in New York, covering a New York rental car, and driven by a New York citizen even though the accident at issue occurred in South Carolina); *Yeager v. Md. Cas. Co.*, 868 F. Supp. 141, 144 (D.S.C. 1994) ("The mere fact that the accident and resulting lawsuit occurred here is insufficient to trigger the application of South Carolina law to [the p]laintiff's bad faith claim.").

exception on that basis.  Based on all of the foregoing, I would affirm the circuit court's grant of summary judgment in favor of USAA.[6]

---

[6] I decline to address Tyrin's second issue regarding the prematurity of summary judgment as my proposed disposition of the prior issue would be dispositive.  *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (appellate court need not address remaining issues when disposition of prior issue is dispositive).