## 18070

Howard Cooper JOHNSTON, Appellant, v. The COMMERCIAL TRAVELERS MUTUAL ACCIDENT ASSOCIATION OF AMERICA, Respondent.

(131 S. E. (2d) 91)

*J. D. Parler, Esq.,* of St. George, *for Appellant,*

*Messrs. Joseph R. Young and Hagood, Rivers & Young,*
of Charleston, *for Respondent*

May 16, 1963.

TAYLOR, Chief Justice.

Plaintiff brought this action in the Court of Common Pleas for Dorchester County against defendant, The Commercial Travelers Mutual Accident Association of America, to recover $5,000.00 for the loss of a hand and $216.00 for certain medical benefits claimed to be due on an accident policy or certificate of insurance issued by defendant, dated July 9, 1949.

Trial was held before Honorable J. B. Pruitt and a jury during the April Term of Court. At the conclusion of the evidence, Judge Pruitt, with the consent of counsel, held that the evidence presented a question of law and withdrew the matter from the consideration of the jury. Thereafter, in his Order dated June 23, 1961, he held that the contract of insurance was entered into and delivered in the State of New York and was to be construed in accordance with the laws of that State. Judgment in accordance with said Order was entered for the defendant and plaintiff appeals.

From 1949, when application was made for said policy, until the time of trial, plaintiff was a resident of St. George, South Carolina. The application was mailed to defendant at its office in Utica, New York, June 1, 1949. Defendant, by letter dated June 27, 1949, advised that it could not accept the application unless plaintiff signed and returned a policy rider. Plaintiff returned the signed rider and thereafter the policy was mailed by defendant in Utica and received by plaintiff in St. George. The premiums were mailed by plaintiff to defendant. The policy provided coverage of $10,000.00 for loss of one hand and one foot and $5,000.00 for loss of one hand or .one foot. The policy also provided

that "the word 'loss' as herein used in reference to hands or feet shall mean actual severance at or above wrist or ankle; * * *"

On October 17, 1955, plaintiff while operating an electric saw accidently lost four fingers of his left hand and had his foot severed above the ankle. Plaintiff was hospitalized and subsequently made claim under the policy for the loss of his foot and his hand. On December 27, 1955, defendant forwarded its draft for $5,279.00, which contained the following clause in very small type above the name of the payee: "Pay in full settlement and payment of all claims originating on or about the 17th day of October, 1955, to the order of Howard C. Johnston." Accompanying said draft was a letter from defendant pointing out the "loss of hand benefit is payable only when the hand is amputated at or above the wrist." Upon receipt, plaintiff cashed said draft.

In addition to the policy provision defining loss of hand or foot as meaning actual severance at or above the wrist or ankle, defendant relies in its answer upon the following policy provisions in defense and denial of plaintiff's claim:

## "STANDARD PROVISIONS
\* \* \*

"14. No action at law or in equity shall be brought to recover on this certificate prior to the expiration of sixty days after proof of loss has been filed in accordance with the requirements of this certificate nor shall such action be brought at all unless brought within two years from the expiration of the time within which proof of loss is required by the certificate.

\* \* \*

## "ADDITIONAL PROVISIONS
\* \* \*

"7. This contract, unless issued and delivered to a resident of Canada, shall for all purposes be deemed to be executed, issued and delivered within, and to be construed in accord-

ance only with the laws of the State of New York. If issued and delivered to a resident of Canada it shall be deemed to be made in dollars of Canadian currency and shall be subject to the laws of the Province where issued, and any provision herein inconsistent with such laws is hereby amended to conform thereto."

The above provisions are in conflict with the following Sections of the South Carolina Insurance Code, enacted in 1947, as they appear in the 1962 Code:

Section 37-141: "All contracts of insurance on property, lives or interests in this State shall be deemed to be made therein and all contracts of insurance the applications for which are taken within the State shall be deemed to have been made within this State and are subject to the laws thereof."

Section 37-456: "In any and every accident insurance policy hereafter issued in this State the 'loss of a hand' shall not be limited to the loss 'at or above the wrist or joint' but shall include and likewise mean the loss of the four fingers entire, and every indemnity provided in such policy for the loss of a hand shall be payable likewise for the loss of four fingers entire.

Section 37-487, Code of Laws of South Carolina, 1952, as amended by the 1956 amendment and appearing as Section 37-471.14 of the 1960 Cumulative Supplement, and Section 37-474(11) of the 1962 Code all provide for a six year statute of limitations in all actions arising under health and accident policies.

Defendant contended and Judge Pruitt found that the contract of insurance was a New York contract and is to be construed under the laws of that State, as the *lex loci contractus,* citing *Jones v. Prudential Ins. Co.,* 210 S. C. 264, 42 S. E. (2d) 331, as authority. The *Jones case,* however, was decided prior to the enactment of Section 37-141 of our present Insurance Code. The Constitutionality of this Section of the Code has not been questioned. The public policy

enacted by the Legislature on this subject is clearly to the effect that all contracts of insurance on property, lives or interest located in this State shall be deemed made herein and subject to our insurance laws.

In light of this Section it becomes immaterial where the contract is technically entered into as under the facts of this case the State of South Carolina has sufficient connection with the formation of such contract that our public policy demands that it conform with the requirements of our Insurance Code. Plaintiff was a resident of this State when he applied for this policy, it was delivered to him here, all premiums were mailed from this State, plaintiff was injured here and this is the proper forum under our decisions in which to bring suit. Under the above facts the contract will be treated as being made in South Carolina as South Carolina has a manifest governmental interest in protecting the rights of its citizens.

"In recent years there has been a tremendous growth in mail order insurance business. Many companies doing business in this manner maintain an office and own property only in the state where they are incorporated but insure risks on a nationwide basis. Frequently they have no agents or solicitors. New business is secured by advertisement and solicitation by mail. The hardship of requiring as assured or his beneficiary to hire a lawyer to prosecute small claims in a state far from the residence of the policy holder soon became evident. In order to provide the policy holder with a means of enforcing his rights without having to suffer the inconvenience and costs, oftentimes prohibitive, of suing in a foreign jurisdiction, a number of states have enacted statutes similar in all material respects, to the one under consideration." *Ross v. American Income Life Ins. Co., et al.*, 232 S. C. 433, 102 S. E. (2d) 743.

In the *Ross case, supra,* this Court was concerned with the jurisdiction of the Court pursuant to Section 37-265, Code of Laws of South Carolina, 1952. There two Indiana Insurance Companies, neither of whom had been licensed to do

business in South Carolina, were held under our Code to be subject to suit in South Carolina. In instant case, the question is whether South Carolina law is applicable to determine the rights of the parties under a contract of insurance issued by a foreign insurance company not licensed to do business in this State. The Second Circuit Court of Appeals in *Zogg v. Penn Mutual Life Insurance Co.*, 276 F. (2d) 861, used the following language, which is apropos here:

"The question remains, however, whether N. Y. Insurance Law § 155 is nevertheless applicable. Defendant's position is that formation of the contract in Massachusetts requires a reference to the law of that state as the *locus contractus*. We need not consider the extent to which this choice-of-law rule may today be considered as generally applicable in the contract field. It need only be noted that in the area of adhesion contracts, particularly in the insurance field, any generalization as to a majority, or even preferable, view is apt to constitute a misleading oversimplification. Cf. Ehrenzweig, Contracts in the Conflict of Laws, 59 Col. L. Rev. 973, 986, 1014 (1959). Decisions involving the applicability of the insurance laws of the several states to transactions including foreign elements appear irreconcilable in terms of any uniform conflict-of-laws theory. If any trend is discernible in these cases, it is that of a forum to apply its own law to adhesion contracts of insurance entered into by its residents. See Lenhoff, Conflict Avoidance in Insurance, 21 Law & Contemp. Prob. 549, 551-552 (1956).

"Thus we find the considerations which led the New York Court of Appeals in *Auten v. Auten*, 308 N. Y. 155, 124 N. E. (2d) 99, 101, 50 A. L. R. (2d) 246, to adopt a flexible choice-of-law rule looking to the 'center of gravity' of the contract a *fortiori* applicable to the agreement here involved. See also *Rubin v. Irvin Trust Co.*, 305 N. Y. 288, 113 N. E. (2d) 424; *Global Commerce Corp., S. A. v. Clark-Babbitt Industries, Inc.*, 2 Cir., 239 F. (2d) 716. The insured was at all times a resident of New York; the

defendant was licensed by New York to engage in the business of life insurance within the state; the policy was mailed by defendant's agent to the insured's residence in New York; and the original beneficiary was a resident of New York, as is the plaintiff herein. Under these circumstances a New York court could only conclude from a 'grouping of the significant contracts' that the validity of the contract and its provisions is controlled by the internal law of the forum, which includes its public policy as legislatively expressed.

"* * * But here the tenor of the comprehensive insurance regulation adopted by New York indicates a legislative awareness of the interstate character of most insurance transactions. The statutory scheme carefully distinguishes 'domestic,' 'foreign,' and 'alien' insurers. N. Y. Insurance Law § 4. Further, § 155 contains explicit provision indicating its intended scope. It applies to any policy of life insurance 'delivered or issued for delivery in this state.' "

Following the same reasoning, Section 37-141 makes all insurance contracts on property, lives or interests located in this State subject to our Insurance Code and was clearly an attempt on the part of the Legislature to regulate the type of insurance contract under consideration here.

Having decided that the contract in question is controlled by and subject to our Insurance Code, any policy provisions inconsistent therewith are void and the pertinent provisions of the Statute prevail as much as if expressly incorporated in the policy. *Weston v. Metropolitan Life Ins. Co.,* 206 S. C. 128, 33 S. E. (2d) 386.

Defendant contends as an additional sustaining ground that the acceptance and negotiation of the draft was in full settlement of all claims originating on or about the 17th day of October, 1955. The general rule is that "Where a claim is unliquidated, or in dispute, payment and acceptance of a less sum than claimed, in satisfaction, operates as an accord and satisfaction; as the rule that the receiving of a part of a debt due under an agreement that the same shall

be in full satisfaction is no bar to an action to recover the balance, does not apply where the plaintiff's claim is disputed or unliquidated." *Strange v. Gulf Refining Co.,* 142 S. C. 102, 140 S. E. 307.

In 1 Am. Jur. (2d), Section 19, page 318, we find the following:

"Where there are several accounts or claims existing between the parties, acceptance of a check marked with words such as 'in full payment,' or 'account in full,' will not result in an accord and satisfaction unless it is clear what claims or accounts are intended to be covered by the remittance, or unless it is clear that the remittance is tendered as payment of all claims and accounts existing between the parties, * * *"

As heretofore stated, on the face of the check in small type were the words "Pay in full settlement and payment of all claims originating on or about the 17th day of October, 1955, to the order of Howard C. Johnston." Accompanying said check was the following letter:

"Under the terms of your policy no loss of time benefit can be paid when payment is made under Section A of the policy.

"The loss of hand benefit is payable only when the hand is amputated at or above the wrist.

"If you have any further question concerning this settlement, do not hesitate to write us."

This correspondence makes it clear that payment was being tendered not for all claims originating on October 17, 1955, but rather was payment of the undisputed claim for the loss of plaintiff's foot. No payment was made of any part of the claim now in dispute. The check was given for an amount concededly due on one of two promises in the policy and is not an accord and satisfaction for the release of plaintiff's claim for loss of his hand as there is no consideration. See *Jefferson Standard Life Ins. Co. v. Lightsey,* 4th Cir., 49. F. (2d) 586. "* * * the general rule is that payment

of an undisputed claim is not consideration for the discharge of another distinct and independent claim, regardless of whether the claims arise under the same or different contracts, * * *" 1 Am. Jur. (2d), Section 34, page 332.

For the foregoing reasons, we are of opinion that the Order appealed from should be reversed and judgment entered for Appellant; and it is so ordered.

Reversed.

Moss, Lewis, Bussey and Brailsford, JJ., concur.