[ PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 96-9270

_____
D. C. Docket Nos. CV194-126
& CV195-39

BOARDMAN PETROLEUM, INC., d.b.a. Red & Jack
Oil Company,

Plaintiff-Appellant,

versus

FEDERATED MUTUAL INSURANCE COMPANY,

Defendant-Appellee,

--------------------------------------------------------------------------------------------------------

FEDERATED MUTUAL INSURANCE COMPANY, a
Minnesota Corporation,

Plaintiff-Appellee,

versus

BOARDMAN PETROLEUM, INC., a Georgia
corporation d.b.a Red & Jack Oil Company,

Defendant-Cross-Defendant-
Appellant,

FIREMAN'S FUND INSURANCE COMPANY, a California
corporation, d.b.a. American Automobile
Insurance Company,

Defendant-Cross-Claimant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____
**(February 19, 1998)**

Before HATCHETT, Chief Judge, EDMONDSON and COX, Circuit Judges.

COX, Circuit Judge:

Boardman Petroleum, Inc., d/b/a/ Red & Jack Oil Company ("Boardman"), appeals the district court's summary judgment in favor of Federated Mutual Insurance Company ("Federated") on the choice-of-law applicable to these consolidated cases. We vacate and remand.

## I.  BACKGROUND

Boardman owns and operates a chain of retail gasoline stations and convenience stores located throughout the Southeast.  Federated is a policyholder-owned insurer with its home office in Minnesota.  At the time these cases arose, Federated insured Boardman under a number of policies, none of which contains a choice-of-law provision.

Over the years, Boardman has presented Federated with several environmental-related insurance claims arising from its ownership and operation of gas stations. The claims at issue in this litigation concern two gas stations located in South Carolina.

Boardman notified Federated of contamination at these sites and asked Federated to undertake all remedial efforts required by law. Federated investigated the claims and determined that no coverage existed under its policy provisions. Federated sent Boardman a letter dated July 21, 1994, explaining its no-coverage determination. On July 22, 1994, Federated filed an action for a declaratory judgment in a federal court in South Carolina. In August 1994, Boardman sued separately for breach of contract and declaratory relief in a Georgia federal court. The South Carolina court transferred Federated's case to the Georgia court under 28 U.S.C. § 1404(a) and the Georgia court subsequently consolidated the cases.

Pursuant to a global settlement agreement, Federated and Boardman resolved all issues in these cases but one: which state's law should apply to the consolidated cases? The parties filed cross-motions for summary judgment on the choice-of-law issue. The district court granted Federated's motion, denied Boardman's, and applied South Carolina law to the consolidated cases. The parties had stipulated that if South Carolina law applies, no coverage exists for Boardman's claims. The district court entered final judgment in each of the consolidated cases to that effect.

## II. DISCUSSION

The issue on appeal is whether the district court erred in determining that South Carolina law should apply to these consolidated cases. We review *de novo* the district

3

court's decision to grant Federated's motion for summary judgment and to deny Boardman's motion for summary judgment.[1]

Federal courts sitting in diversity apply the forum state's choice-of-law rules.[2] It is also true, however, that when a case is transferred from one forum to another, the transferor court's choice-of-law rules apply to the transferred case even after the transfer occurs.[3] Further, consolidation of cases under Fed. R. Civ. P. 42 does not strip the cases of their individual identities.

Georgia does not have a statutory choice-of-law rule, but in contract cases, it follows the traditional doctrine of *lex loci contractus*: contracts are "governed as to their nature, validity and interpretation by the law of the place where they were made" unless the contract is to be performed in a state other than that in which it was made.[4] South Carolina's applicable choice-of-law statute provides that "[a]ll contracts of insurance on property, lives, or interests in this State are considered to be made in the

---

[1] *See, e.g.*, Tinney v. Shores, 77 F.3d 378, 380 (11th Cir. 1996).

[2] Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941).

[3] *See* 28 U.S.C. § 1404(a); Ferens v. John Deere Co., 494 U.S. 516, 518-19, S.Ct. 1274, 1277 (1990); Roofing & Sheet Metal Serv., Inc. v. La Quinta Motor Inns, Inc., 689 F.2d 982, 991 (11th Cir. 1982).

[4] General Tel. Co. v. Trimm, 252 Ga. 95, 311 S.E.2d 460, 461 (1984) (citing Cox v. Adams, 2 Ga. 158 (1847)).

4

State and all contracts of insurance the application for which are taken within the State are . . . subject to the laws of this State." [5]

Under Georgia law, an insurance contract is "made" where it is delivered.[6] Georgia courts have held that when insurance contracts made in Georgia lack a choice-of-law provision, the parties are presumed to have intended their contract to be governed by Georgia law.[7] The insurance contracts at issue here were delivered at Boardman's home office in Georgia, and none of the contracts contains a choice-of-law provision. Thus, under Georgia law, the parties are presumed to have intended their contract to be governed by Georgia law. The plain language of the South Carolina statute mandates that South Carolina law applies because the property at issue is in South Carolina. Thus, the choice-of-law rule governing Boardman's breach of contract and declaratory judgment action mandates the application of Georgia law, while the choice-of-law rule governing Federated's declaratory judgment action calls for the application of South Carolina law.

---

[5] S.C. Code Ann. § 38-61-10.

[6] *See* Pink v. A.A.A. Highway Express, Inc., 191 Ga. 502, 513, 13 S.E.2d 337, *aff'd*, 314 U.S. 201 (1941).

[7] *See* General Elec. Credit Corp. v. Home Indem. Co., 168 Ga. App. 344, 350, 309 S.E.2d 152 (1983); Boardman Petroleum, Inc. v. Federated Mut. Ins. Co., 926 F. Supp. 1566, 1576 (1995).

This court has never addressed the issue of how to determine which state's law applies in consolidated cases such as these, when the choice-of-law provisions governing each of the separate lawsuits require the application of differing state substantive laws. The district court performed a "balancing of interests" analysis, weighing the interests of each state in having its law apply and choosing the law of the state with the greater interests. We hold that the "balancing of interests" analysis is the appropriate way to determine which state's law applies in consolidated cases such as these where of necessity only one state's law may be applied. Therefore, if, in consolidated cases such as these, when the choice-of-law provisions governing each of the separate lawsuits require the application of differing state substantive laws, the court should balance the interests of each state in having its laws apply and apply the law of the state with the greater interests.

The district court determined that the interests of South Carolina in having its laws apply outweighed those of Georgia, and therefore determined that South Carolina law should apply to the consolidated cases. The district court noted that the language of the South Carolina statute indicates a strong South Carolina policy in favor of subjecting insurance contracts on property located in South Carolina to South Carolina law. The district court reasoned that because the only property at issue in the litigation lies in South Carolina, the strong policy interest expressed in the South

6

Carolina statute is implicated; therefore, South Carolina law should "define the extent of an interest in land within her boundaries."[8] We disagree with the district court's conclusion that South Carolina's interests in having its laws apply outweigh Georgia's interests in applying its laws to the consolidated cases.

Although Georgia does not have an applicable choice-of-law statute, Georgia case law has continually expressed Georgia's policy concerns in protecting the interest of its insured residents, even when the property damage for which coverage is sought occurred in another state.[9] Further, some Georgia courts have suggested that performance under a general liability policy is the payment of claims;[10] under this theory, the contracts at issue in the instant case contemplated performance in Georgia, as the payments would be made to Boardman's home office in Georgia. Thus, the exception under the *lex loci contractus* doctrine for contracts performed in other states is inapplicable.

---

[8] (R.2-61 at 8.)

[9] *See, e.g.*, Atlantic Wood Industries, Inc. v. Lumbermen's Underwriting Alliance, 196 Ga. App. 503, 396 S.E.2d 541 (1990) (holding that Georgia law would apply to general liability insurance policy interpretation issues because policies were delivered in Georgia even though contaminated property owned by the insured for which coverage was sought was located in Virginia); Claussen v. Aetna Cas. & Sur. Co., 754 F.Supp. 1576, 1579 (1990) (holding that Georgia substantive law applied to insurance policy interpretation issues for policy delivered in Georgia even though insured's contaminated property was located in Florida).

[10] *See, e.g.* Federal Ins. Co. v. Nat'l Distrib. Co., 203 Ga. App. 763, 767, 417 S.E.2d 671, 675 (1990).

In addition to the fact that the contracts were made in Georgia and involved a Georgia resident insured, the policies issued by Federated to Boardman has to be submitted for review and approval by the Georgia Insurance Commissioner's office.[11] Federated, by contrast, was under no obligation to submit the policies for review and approval by the South Carolina Insurance Commissioner, as the policies were neither issued nor sold in the state of South Carolina.[12] Moreover, application of South Carolina law to the policies at issue here would lead to inconsistent interpretations of the same policy language.[13]

No evidence of South Carolina's interests tips the balance. First, the primary policy concerns motivating the enactment of the South Carolina statute are not implicated by the facts. The South Carolina Supreme Court has emphasized that South Carolina's statutory choice-of-law provision applicable to contracts of insurance on property, lives, and interests located within the state was intended to

---

[11] *See* O.C.G.A. §§ 33-3-21, 33-3-21.1.

[12] *See* S.C. Code Ann. § 38-61-20(A).

[13] South Carolina courts have consistently applied the "manifestation trigger of coverage" position to insurance policies, under which coverage is triggered only if the property damage both takes place and is discovered within the policy period. *See* Safeco Ins. Co. v. Federated Mut. Ins. Co., 915 F.2d 1565 (4th Cir. 1990). Courts applying Georgia, Florida, and Alabama law, however, have rejected the "manifestation trigger of coverage" approach in favor of an approach under which coverage is triggered by property damage alone taking place during the policy period. *See* Continental Cas. Co. v. Synalloy Corp., 667 F.Supp. 1563 (S.D.Ga. 1986) (applying Georgia law); Trizec Properties, Inc. v. Biltmore Const. Co. 767 F.2d 810 (11th Cir. 1985) (applying Florida law); Commercial Inion Ins. Co. v. Sepco Corp., 765 F.2d 1543 (11th Cir. 1985) (applying Alabama law).

further South Carolina's interest in protecting the rights of its citizens.[14] The court went on to say that statutes such as these provide policyholders with a means of enforcing their rights against mail-order insurance companies who maintain an office and own property only in the state where they are incorporated.[15] The court noted that the trend in cases dealing with choice-of-law determination in the insurance coverage context is for a "forum to apply its own law to adhesion contracts of insurance entered into by its residents."[16] Thus, it appears that the primary policy consideration behind the enactment of § 38-61-10 is the protection of the rights of South Carolina citizen insureds. Here the insured is a Georgia corporation, the policies were delivered to its home office in Georgia, and performance will take place in Georgia. Second, the property is located in South Carolina, but Boardman, not Federated, bears the responsibility of supervising the remediation of these sites.[17] Thus, the location of the property alone is not a heavy weight in favor of the application of South Carolina law considering the strong interests Georgia has in having its law applied in these cases.

### III. CONCLUSION

---

[14] Johnston v. Commercial Travelers Mut. Acc. Ass'n of America, 131 S.E.2d 91, 94 (1963).

[15] *See id.*

[16] *Id.* at 95 (citations omitted).

[17] (R.3-71-24.)

For these reasons, we conclude that the district court erred in granting summary judgment in favor of Federated and applying South Carolina law to the consolidated cases. We therefore vacate the judgment in Federated's favor and remand with instruction to grant summary judgment in Boardman's favor on the choice-of-law issue.

VACATED AND REMANDED WITH INSTRUCTION.