**PRAETORIAN INSURANCE COMPANY, Plaintiff**

v.

**APD SOLUTIONS, LLC, Defendant**

**CIVIL ACTION NO. 1:15–CV–1264–ODE**

United States District Court, N.D. Georgia, Atlanta Division.

Signed 05/20/2016

Colleen V. McCaffrey, Paul Lindsey Fields, Jr., Ann Theresa Kirk, Fields Howell LLP, Atlanta, GA, for Plaintiff.

Michelle Renee Williams, Robert Maceo Ayorinde Dukes, Dukes Williams, LLC, Atlanta, GA, for Defendant.

## ORDER

ORINDA D. EVANS, UNITED STATES DISTRICT JUDGE

This declaratory judgment action comes before the Court on Plaintiff Praetorian Insurance Company's ("Praetorian") Motion for Summary Judgment [Doc. 26]. For the reasons discussed below, Praetorian's Motion [Doc. 26] is GRANTED.

## I. Factual Background

The following facts are undisputed unless stated otherwise.

Defendant APD Solutions, LLC ("APD") is a community economic development company that assists local governments in managing programs funded by the federal government [Examination under Oath of Vaughn Irons and Donna Tyler, Doc. 26-1 at 11:18–25]. The City of Atlanta retained APD to build, develop, and manage several properties with federal neighborhood stabilization funds [Id. at 16:25–17:15, 20:3–21:17]. One of these properties was an abandoned twelve-unit apartment building located at 340 Holly Street in Atlanta, Georgia (the "Property") [Id. at 16:25–17:15, 18:20–19:20]. A subsidiary of APD purchased the Property on October 10, 2012 through a loan from the City of Atlanta [Id. at 17:24–18:3, 21:33–22:4].

The Property was originally insured by Great American Assurance Company from October 10, 2013 to January 10, 2014 [Compl. ¶ 11; Answer ¶ 11].[1] After this insurance lapsed, APD, through its retail insurance agent Sutter, McLellan, and Gilbreath ("Sutter") completed and sent an application to Praetorian for insurance on the Property [Compl. ¶ 13, Answer ¶ 13]. This application was dated March 20, 2014, but was not signed until June 18, 2014 [Id.]. The application asked APD to describe its loss history on the Property [Compl. ¶ 15, Answer ¶ 15]. APD did not list any losses on the Property [Compl. ¶ 16, Answer ¶ 16]. Praetorian issued a quote for Builders Risk Coverage for a premium of $2,804.00 to APD on April 1, 2014 [Doc. 26-5]. By June 20, 2014, Laura N. Fowler, an account manager at Sutter, indicated to Donna Tyler, senior vice president at APD, that "the policy is ready to be issued" and that "all [Praetorian would] need is the attached application signed where indicated and the payment of $2,804.00" [Doc. 26-6].

APD presents evidence of a check, dated July 15, 2014, for $2,804.00 to Sutter [Doc. 26-9 at 9]. The memo line of the check

---

1. In its Response to Praetorian's Statement of Undisputed Material Facts, APD repeatedly asks the Court to not consider facts which are "supported by a citation to a pleading rather than to evidence." LR 56.1(B)(1), NDGa. However, "[t]he general rule is that a party is bound by the admissions in [its] pleadings." Cooper v. Meridian Yachts, Ltd., 575 F.3d 1151, 1177–78 (11th Cir. 2009) (citation omitted). Thus, the Court will consider facts admitted by APD in its Answer to Praetorian's Complaint.

states "Attn: Judy Shaw 340 Holly Street Builders Risk" [Id.]. APD maintains that this check was put into the mail on the same day [Doc. 26–1 at 36–37].

At some point in time between July 16, 2014 and July 17, 2014, a fire broke out at the Property. The Atlanta Fire Department arrived at the Property at 12:45 a.m. on July 17, 2014 [Doc. 26–7]. By this time, the Property had already sustained damage [Id.].

At 8:07 a.m. on July 17, 2014, Donna Tyler of APD emailed a field representative inspector at APD, Jade Wiles, to ask her to confirm if a fire had occurred at the Property [Doc. 26–8]. Wiles responded at 10:23 a.m., confirming the fire and attaching pictures of the fire damage [Id.]. At 1:14 p.m., Jamila Caldwell, a project specialist at APD, emailed Laura Fowler asking her what type of insurance coverage APD had on the Property [Doc. 26–9 at 4]. Fowler responded at 1:33 p.m., stating that a General Liability policy was the only active policy at that time [Id. at 3]. Caldwell then responded at 1:41 p.m., asking whether the Builders Risk coverage was cancelled "prior to the attached payment being made" [Id. at 2]. Fowler maintains that Caldwell attached a copy of the check, dated July 15, 2014, to this email [Affidavit of Laura N. Fowler, Doc. 26–3 ¶¶ 6–8]. Fowler responded at 1:45 p.m., stating that the Builders Risk coverage had been cancelled on January 10, 2014 [Doc. 26–9 at 2]. Fowler also asked "When was this payment sent? . . . Was it emailed or mailed?" [Id.]. Caldwell responded at 1:52 p.m., clarifying that the check was mailed [Doc. 26–12 at 3].

At 3:04 p.m., Fowler emailed Caldwell with what appears to be a record of communications between APD and Sutter [Id. at 2–3]. A section of that email reads "6/19/2014 apps sent in but no payment" [Id.]. Fowler closed the email with the following statement:

This builders risk for 340 Holly Street, cannot be bound until the payment is received. We can use the copy of the check as payment and swipe the funds from the account and void the paper check when received and send back to you, to be able to bind today if you wish. Please let us know how to proceed.

[Id.].

Following this email from Fowler, Caldwell appears to have authorized Fowler to proceed and bind the coverage. Fowler sent internal emails to other Sutter employees at 3:16 p.m. and 3:18 p.m. confirming receipt of the check [Docs. 26–10, 26–11]. At 3:59 p.m., Fowler send a binder for the Builders Risk Policy to Caldwell [Doc. 26–14]. The effective date of the binder was July 17, 2014 [Id.].

At 4:03 p.m., Caldwell emailed Fowler to ask if the effective date of the binder could be July 15, 2014, the date the check was issued [Doc. 26–15 at 2]. Fowler responded at 4:11 p.m., stating that "the effective date is the date we receive the check which was today [July 17, 2014]" [Id. at 1].

On July 21, 2014, Tyler emailed Fowler informing her of the fire at the Property [Doc. 26–17]. This was the first time that APD informed Sutter of the fire at the Property [APD's Response to Praetorian's Statement of Undisputed Material Facts as to Which No Genuine Issue Exists to Be Tried, Doc. 27–2 ¶ 31].

On July 22, 2014, Praetorian issued a full insurance policy on the Property [Doc. 26–16]. One section of the policy, titled "Other Conditions," stated the following:

5. Misrepresentation, Concealment, or Fraud—This coverage is void as to "you" and any other insured if, before or after a loss:

A. "you" or any other insured have willfully concealed or misrepresented:

1) a material fact or circumstance that relates to this insurance or the subject thereof; or

2) "your" interest herein.

B. There has been fraud or false swearing by "you" or any other insured with regard to a matter that relates to this insurance or the subject thereof.

[Id.].

## II. Procedural Background

Praetorian filed its Complaint for Declaratory Relief on April 21, 2015 [Doc. 1]. In the Complaint, Praetorian alleges that APD violated the known loss doctrine ("Count I"), breached the covenant of good faith and fair dealing ("Count II") and voided coverage by making misrepresentations in its application ("Count III") [Id.]. Praetorian asks the Court to declare that the Policy is void, that Praetorian owes Defendant nothing, and that nothing is owed under the Policy [Id.]. APD filed its Answer on June 1, 2015 [Doc. 5]. APD asks the Court to declare the Policy valid beginning July 15, 2014, that fire damage to the Property is insured pursuant to the Policy, and that Praetorian owes APD for all losses caused by the July 17, 2014 fire [Id.]. The parties then engaged in discovery, which closed on February 7, 2016 [Doc. 22].

On March 8, 2016, Praetorian moved for summary judgment on all counts [Doc. 26]. APD filed a Response [Doc. 27], and Praetorian filed a Reply [Doc. 30]. Accordingly, the Motion is now ripe for review.

## III. Legal Standard

The Court will grant summary judgment when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[T]he substantive law will identify which facts are material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden then shifts to the non-movant, who must offer affirmative evidence to establish the existence of a genuine issue of material fact. Walker v. Darby, 911 F.2d 1573, 1576–77 (11th Cir. 1990) (the non-moving party "may not rest upon the mere allegations or denials in its pleadings. Rather, its responses, either by affidavits or otherwise as provided by [Rule 56(e) ] must set forth specific facts showing that there is a genuine issue for trial.").

In reviewing the record, the Court must make all reasonable inferences in favor of the nonmoving party. Anderson, 477 U.S. at 255, 106 S.Ct. 2505; Reese v. Herbert, 527 F.3d 1253, 1271 (11th Cir. 2008). A genuine dispute only exists, however, where a jury could reasonably find for the non-moving party. Walker, 911 F.2d at 1576–77. Thus, "a mere 'scintilla' of evidence supporting the opposing party's position will not suffice" to overcome a motion for summary judgment. Id. at 1577.

## IV. Discussion

Praetorian asks the Court to void the policy because coverage is unavailable for a known loss and APD violated the Concealment, Fraud, and Misrepresentation Provision of the Policy. As a threshold matter, because the Court's jurisdiction over this matter is based on the diversity of the parties, the Court must apply Georgia's choice of law rules. Collegiate Licens-

ing Co. v. Am. Cas. Co. of Reading, Pa., 842 F.Supp.2d 1360, 1367 (N.D. Ga. 2012) (Thrash, J.). In contractual disputes, Georgia follows the rule of lex loci contractus, which requires the Court to apply the law of the place where the contract was made. Id. (citing Boardman Petroleum, Inc. v. Federated Mut. Ins. Co., 135 F.3d 750, 752 (11th Cir. 1998)). Here, the contract was made in Georgia, so Georgia state law applies to Praetorian's claims. The Court now turns to Praetorian's arguments.

Praetorian concedes in its argument for the known loss doctrine that "Georgia has not had to address whether an insured may obtain coverage when it learns of loss prior to binding the policy, but fails to advise the insurer" [Doc. 26–1 at 12]. Nevertheless, Praetorian asks the Court to apply the known loss doctrine, and cites decisions from other state courts in support. There is, however, no reason for the Court to assess whether Georgia courts would apply the known loss doctrine because Praetorian's argument clearly demonstrates a violation of O.G.C.A. § 33–24–7(b) which entitles Praetorian to relief.

O.G.C.A. § 33–24–7 governs representations in applications. O.G.C.A. § 33–24–7(a) defines all statements and descriptions in applications for insurance policies as representations. O.G.C.A. § 33–24–7(b) then states the following:

> (b) Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless:
> (1) Fraudulent;
> (2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or
> (3) The insurer in good faith would either not have issued the policy or contract or would not have issued a policy or contract in as large an amount or at the premium rate as applied for or would not have provided

coverage with respect to the hazard resulting in the loss if the true facts had been known to the insurer as required either by the application for the policy or contract or otherwise.

O.G.C.A. § 33–24–7(b).

The inquiry under O.G.C.A. § 33–24–7 is two-fold. Praetorian must demonstrate that APD made false representations, and those misrepresentations were material from the view of a prudent insurer. Lively v. S. Heritage Ins. Co., 256 Ga.App. 195, 196, 568 S.E.2d 98 (Ga. Ct. App. 2002). "A material misrepresentation is one that would influence a prudent insurer in determining whether or not to accept the risk, or in fixing a different amount of premium in the event of such acceptance." Id. (citation omitted). The standard is objective, and the issue of materiality is only a question of law if the evidence excludes every reasonable inference except that the misrepresentation was material. Id.

The parties do not dispute that the application submitted by APD made no claim of loss history on the Property up to and beyond the date the fire broke out at the Property. The parties also do not dispute that Praetorian consistently maintained that no binder would be issued on the Property until Praetorian received both the application and payment. Because the application and the payment were not received until after the fire broke out on the Property, APD's failure to update the application to note the fire on the Property is a false representation under O.G.C.A. § 33–24–7(b). This misrepresentation is material, as a fire would influence a prudent insurer on its decision to both accept the risk or set the premium for the insurance. See id.

APD does not dispute these legal conclusions, but instead argues that the record is replete with disputes of material fact.

APD's arguments, however, fail to point out any material fact dispute which prevents summary judgment.

APD first argues that the parties' prior course of dealing may demonstrate that an insurance contract was formed before the fire damaged the Property, and this issue prevents summary judgment. APD states that "the ordinary course of business with Sutter was to mail a paper check and send an electronic copy to the agent via an attachment to an email message" [Response at 5]. APD's argument, however, fails in two ways. First, APD provides no evidence to establish the course or pattern of conduct by APD and Sutter on previous occasions for a jury, or the Court, to assess whether APD's actions in this instance were in line with its prior dealings. Without this evidence, APD cannot properly argue that its behavior in insuring the Property falls in line with its prior dealings. See Ray v. Ga. Farm Bureau Mut. Ins. Co., 176 Ga.App. 776, 781, 337 S.E.2d 779 (Ga. Ct. App. 1985). Second, and more importantly, APD's alleged prior course of dealing supports the Court's conclusion that APD made a false representation. Here, APD claims to have mailed the check on July 15, 2014. But APD admits that it did not send an electronic copy of the check until July 17, 2014, well after the fire broke out on the Property. Thus, APD did not "mail a paper check and send an electronic copy to the agent" until after the fire broke out on the Property. Accordingly, the Court finds that the parties' alleged prior course of dealing fails to create an issue of material fact as to when the binder was formed.

APD next argues that an issue of fact exists as to when the premium payment and application were submitted. In support of its argument, APD relies on the testimony of Tyler, an APD employee, who asserts that the application and check were sent on July 15, 2014. APD also attempts to argue that Fowler's testimony concerning when she received the application contradicts itself. APD summarizes Fowler's testimony concerning the receipt of the application as follows:

Interpreting these facts in the light most favorable to APD does not create an issue of material fact. Even assuming that the application was signed on June 20, 2014, which would assume that APD signed and submitted the document shortly after Fowler, on behalf of Praetorian, indicated the document needed to be signed, Praetorian has presented undisputed evidence that the binder would not issue until Praetorian received the application and check. The earliest time that Praetorian had received both the application and the check was 1:41 p.m. on July 17, 2014, when Caldwell, an APD employee, attached an electronic copy of the check to her email to Fowler, an employee at Sutter who was negotiating the coverage for APD with Praetorian [Doc. 26–9].[2] This timing is further supported by the email evidence of Fowler's actions following the receipt of the check, including the eventual issuance of the binder of insurance [Docs. 26–10, 26–11, 26–14]. APD's focus on the time when it sent the application does not create a material dispute of fact, as the evidence clearly demonstrates that the check was not received until after the fire broke out on the Property.

The undisputed evidence shows that, at the time APD submitted its application for

---

**2.** APD also argues that Fowler's statements about the timing of the receipt of the check are hearsay, as she is "possibly" relying on statements of others as to when the check was received. The Court disagrees. Fowler's statements about when she received the check are based on her personal knowledge, and this knowledge is consistent with the evidence of her conversation with Caldwell [Doc. 26–9].

insurance and payment to Praetorian, APD made misrepresentations by failing to alert Praetorian of a fire on the Property. This misrepresentation was material from the view of a prudent investor, and the evidence excludes every reasonable inference except that this misrepresentation was material to Praetorian. APD's actions violated O.G.C.A. § 33–24–7, which prevents any recovery under the Policy by APD and voids the Policy issued by Praetorian. See Ga. Cas. & Surety Co. v. Valley Wood, Inc., 336 Ga.App. 795, 783 S.E.2d 441, 443–44 (Ga. Ct. App. 2016).

## V. Conclusion

For the reasons stated above, Plaintiff Praetorian Insurance Company's Motion for Summary Judgment [Doc. 26] is GRANTED. The Insurance Policy is voided, and Praetorian owes nothing under the policy to Defendant APD Solutions, LLC.

SO ORDERED, this 20 day of May, 2016.