[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11733
_____

D.C. Docket No. 1:17-cv-03943-TCB

NATIONWIDE PROPERTY & CASUALTY INSURANCE COMPANY,
NATIONWIDE MUTUAL FIRE INSURANCE COMPANY,

Plaintiffs - Appellees,

versus

RENAISSANCE BLISS, LLC,
RENAISSANCE RESIDENTIAL, LLC,
CITY WALK APARTMENTS, LLC,
RENAISSANCE RETAIL, LLC,
COHEN & ASSOCIATES, LLC,

Defendants - Appellants,

PARIS EVANS,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(August 14, 2020)

Before WILLIAM PRYOR, Chief Judge, ROSENBAUM and LUCK, Circuit Judges.

PER CURIAM:

Nationwide Property and Casualty Insurance Company and Nationwide Mutual Fire Insurance Company (collectively, "Nationwide") insured several firms with ownership interests in Renaissance Walk, a condominium and retail complex in Atlanta, Georgia. In September 2013, Paris Evans was attacked near the complex's parking area, and a corporate officer for five firms affiliated in some way with the complex promptly traveled to Atlanta to investigate. But he did not notify Nationwide of the incident. Nearly two years later, in 2015, Evans filed a lawsuit in state court seeking damages for her injuries. In an amended complaint, she named each of what we will call the Renaissance Entities—City Walk Apartments, LLC, Renaissance Residential, LLC, Renaissance Bliss, LLC, Renaissance Retail, LLC, and Cohen & Associates, LLC—among other defendants. Nationwide provided a defense but eventually discovered that it had not been notified when the Renaissance Entities first learned of the incident.

Nationwide filed this declaratory judgment action regarding its coverage obligations. Shortly thereafter, Nationwide and the Renaissance Entities decided to settle the underlying lawsuit, and they signed an agreement to preserve their dispute in this matter. At summary judgment, the district court concluded that under Georgia law, the Renaissance Entities had unreasonably delayed in notifying Nationwide of

2

the attack on Evans.  As a result, the court granted summary judgment to Nationwide, allowing it to recoup $275,000 that it had paid towards the settlement.

On appeal, the Renaissance Entities raise a new issue:  They argue that the district court lacked jurisdiction because Nationwide's declaratory-judgment action allegedly became moot when Nationwide paid to settle with Evans.  They also contend that the district court wrongly applied Georgia law, rather than California law, and that it erred in holding that the Renaissance Entities' notice to Nationwide was unreasonable as a matter of law.

As set forth below, we conclude that a justiciable case or controversy remains among the parties and that the district court properly resolved the choice-of-law issue in favor of Georgia law.  We also conclude that the Renaissance Entities' delay in notifying Nationwide of the incident was unreasonable as a matter of law.  Accordingly, we affirm.

## I.

### A.

We begin by identifying the several parties and players in this case.  It's a long list, and we start by describing the parties that make up what we have referred to as the Renaissance Entities.

To do that, though, we first give a basic description of the property at the center of the insurance dispute.  As of September 2013, Renaissance Walk was the

3

name of a condominium development located in Atlanta, Georgia.  The complex included several residential units, retail space, and a parking area.

At Renaissance Walk, Renaissance Residential owned about 140 of the residential units, and Renaissance Retail leased on-site ground-floor retail space. Renaissance Bliss, a holding company, owned both Renaissance Residential and Renaissance Retail; all three entities had their principal place of business in California.  After its formation on October 10, 2013, City Walk Apartments, LLC, took title to the residential units that Renaissance Residential owned at Renaissance Walk.

Cohen & Associates managed Renaissance Bliss, Renaissance Residential, and Renaissance Retail, each of which had no employees.  Roni Braitanbaum was the firm's Chief Operating Officer.  In that role, he served as asset manager of Renaissance Residential and Renaissance Retail.  In effect, he was the de facto chief operating officer of Renaissance Bliss, Renaissance Residential, and Renaissance Retail.

Cohen & Associates, in turn, employed Yvette Moore as regional manager, with responsibility for its properties in Florida and Georgia.  As part of her role, she reported incidents or issues at her properties to Braitanbaum.  Cohen & Associates contracted with a separate company for day-to-day management of the condominium units owned by Renaissance Residential.

4

Now that we have described the roles of the various Renaissance Entities, we turn to the plaintiffs in this action—the two insurers, whom we have referred to and will continue to refer to collectively as Nationwide.  Nationwide Property issued the primary commercial general liability policy to Renaissance Bliss and Renaissance Residential, with a general aggregate limit of $2 million and a per-occurrence limit of $1 million.  For its part, Nationwide Mutual issued an excess policy to these same entities with a per-occurrence limit of $5 million.

The policies were delivered by mail to Renaissance Bliss and Renaissance Residential's address in Woodland Hills, California.   Both policies name Renaissance Bliss, Renaissance Residential, and Renaissance Retail as insured parties.  The primary policy identifies the named insureds' business as property owner and condominium manager, and it notes the location of the property in Atlanta, Georgia.  Both policies contain Georgia-specific endorsements, and the excess policy also incorporates the terms of the primary policy by reference.

The primary policy, under the heading of "Duties In The Event Of Occurrence, Offense, Claim Or Suit," provides as follows:  "You must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim," and it defines an "occurrence" as "an accident."  The primary policy also states that "[n]o person or organization has a right under this Coverage

5

Part . . . [t]o sue us on this Coverage Part unless all of its terms have been fully complied with." The excess policy includes nearly identical terms.

**B.**

Evans worked as a property manager for the company with which Cohen & Associates contracted to manage Renaissance Residential's condominium units. In that role, she worked closely with Moore, the regional manager for Cohen & Associates. On September 2, 2013, while Evans was checking to make sure a ground-level door located off the parking deck was closed, she was sexually assaulted by an unidentified man who threatened her by putting a knife to her neck. The man raped her and then tased her twice before leaving the area. The police responded to the incident and spoke with Evans at Renaissance Walk before she was transported to the hospital by paramedics. The police report indicates that apartment staff told the responding officers that a security camera in the parking area was not operational. Renaissance Bliss, Renaissance Residential, Renaissance Retail, and Cohen & Associates did not own or manage these common spaces, which were the responsibility of a condominium association at Renaissance Walk.

That night, Moore called Braitanbaum to inform him that Evans had been attacked. Braitanbaum was concerned about the incident and one of his "team member[s]," so he immediately went to the airport to fly to Atlanta from California. Before leaving for Atlanta, he reported the incident to Gidi Cohen, his supervisor

and the owner of Cohen & Associates.  Once in Atlanta, Braitanbaum investigated the incident by speaking with Moore and members of the concierge staff, watching security-camera footage, and collecting computer data on what Evans had been doing at work.  Braitanbaum also obtained the police report from a police officer who lived in one of Renaissance Residential's units through an arrangement that allowed him to pay discounted rent.

Braitanbaum forwarded the police report to an insurance broker who had placed workers' compensation insurance for his company but had no role in placing liability insurance for the Renaissance Entities.  Braitanbaum was concerned that Evans's injury might result in some liability for Cohen & Associates or one of the entities that he managed.  The broker responded,

> This seems to be Workers Comp claim for the management company, and they should file accordingly. If something happens and you get sued (which you shouldn't, there is no reason for you to[]) then we will discuss.

Relying on this email, Braitanbaum did not report this incident to Nationwide on behalf of Renaissance Residential.  According to Braitanbaum, Renaissance Retail and Renaissance Bliss never considered providing notice because they were not involved with the condominiums or common spaces like the parking area.  Evans ultimately received payment on a workers' compensation claim.

Twenty-one months after the incident, in letters dated June 12, 2015, counsel for Evans requested disclosure of liability insurance covering Renaissance Residential and City Walk Apartments, among other entities, and requested that they preserve any evidence in advance of potential litigation. Counsel for Renaissance Residential and City Walk Apartments forwarded these letters to Nationwide on July 16, 2015.

On August 20, 2015, Evans filed a state-court lawsuit (the "*Evans* litigation") against City Walk Apartments and Renaissance Residential, among other defendants who are not parties to this case. Nationwide initially appointed counsel to defend Renaissance Residential without any reservation of rights.

But on December 18, 2015, Nationwide wrote to the Renaissance Entities' general counsel after learning that Renaissance Residential had knowledge of the incident on the same day that it occurred, even though it had not informed Nationwide for nearly two years after that. As a result, the letter advised Renaissance Residential that Nationwide was reserving its rights to disclaim coverage. Counsel for Renaissance Residential responded, explaining that it had lacked any reason to expect a claim from Evans.

In an amended complaint filed April 28, 2017, Evans added Renaissance Bliss, Renaissance Retail, and Cohen & Associates as defendants

8

Thereafter, Nationwide informed the Renaissance Entities' general counsel that it would also defend Renaissance Residential's "associated parties," including Cohen & Associates and Renaissance Bliss, subject to a reservation of rights. Counsel for Renaissance Residential, Renaissance Bliss, and Cohen & Associates again responded to object to the contention that they had failed to provide timely notice to Nationwide.

Evans alleged in the amended complaint that City Walk Apartments, as successor in interest, owned, occupied, operated, and managed property at the Renaissance Walk location; Renaissance Bliss managed property at this location; and Cohen & Associates owned, occupied, operated, and managed property there. Evans also averred that the defendants knew or should have known of past criminal activity at the location. The complaint included three counts of negligence— negligence for failing to keep the property in proper repair, negligence for failing to keep the property safe, and a general theory of negligence. Evans requested punitive damages.

## C.

Nationwide filed this declaratory judgment action in the Northern District of Georgia on October 6, 2017. Three days later, on October 9, 2017, the parties to the *Evans* litigation participated in a successful mediation. At the mediation, Nationwide agreed to pay $375,000 on behalf of the Renaissance Entities.

9

Nationwide and the Renaissance Entities signed a confidential "Funding and Status Quo Agreement," under which Nationwide would fund the $375,000 settlement. The agreement specified that this payment would "not be deemed a voluntary payment and [would] not waive Nationwide's right to litigate" this already-pending lawsuit. Nationwide agreed to forego recoupment of defense costs and $100,000 of the $375,000 it paid towards settlement, "such that the total amount at issue with respect to the coverage dispute is limited to $275,000." The agreement also provided that the parties did not "waive[] any rights, obligations[,] or defenses except as specifically set forth" in the agreement.

After entering into the Funding and Status Quo Agreement, Nationwide filed an amended complaint in this proceeding on April 27, 2018, with a single claim for declaratory relief. It alleged that the Renaissance Entities "knew, or should have reasonably anticipated" that the attack on Evans "might result in a claim against one or more of the entities insured." Because the Renaissance Entities' failure to provide timely notice was an alleged breach of the insurance policies, Nationwide sought a declaration that it had no legal obligation to cover the Renaissance Entities' losses from the *Evans* litigation. Nationwide alleged that it had "reserved its rights to seek recoupment . . . for a portion of its settlement contribution" and sought a declaration that it was "entitled to reimbursement from its insureds for a portion of the settlement."

The parties eventually filed cross-motions for summary judgment. Nationwide argued that Georgia law governs the contract and that the Renaissance Entities breached conditions precedent to the contract by failing to notify Nationwide promptly.

The Renaissance Entities, on the other hand, argued that the law of California, as the state where the contract was delivered, applies. They also contended that they had not provided late notice and that Nationwide could not prove actual prejudice, as it must under California law. In addition, the Renaissance Entities urged that California law required Nationwide to allocate settlement liability, which it could not do. Finally, the Renaissance Entities asserted that even if Georgia law applied, they had not breached the notice provisions and Nationwide could not recoup payments—both because Georgia law does not recognize an insurer's right to recoupment and because Nationwide had waived any objections to untimely notice.

The district court granted Nationwide's motion for summary judgment and denied the Renaissance Entities' cross-motion. The court first noted that Georgia law likely applied to the insurance contract because it appeared to anticipate performance in Georgia—the location of the insured property—even though the contract was delivered in California. But even if that were not the case, the court opined that Georgia's choice-of-law rules do not apply the common law of other jurisdictions, and the Renaissance Entities had not cited any applicable statutory law

11

from California.  Consequently, the court reasoned, Georgia law would apply, regardless.

Second, the district court held that, as a matter of law, the Renaissance Entities had not shown a sufficient reason to delay in notifying Nationwide of the attack on Evans.  As a result, Nationwide had no duty to defend and indemnify the Renaissance Entities, even without a showing of prejudice.

Third, the court held that it did not matter whether Georgia law recognized an action for recoupment, because Nationwide's claims arose from the "Funding and Status Quo Agreement."  The court likewise rejected the Renaissance Entities' argument that Nationwide waived its objections on the question of proper notice.  For these reasons, the court adjudged that Nationwide was entitled to recoup $275,000 from the Renaissance Entities.

The Renaissance Entities filed a timely notice of appeal.

## II.

We review *de novo* the district court's grant of summary judgment.  *Holloman v. Mail-Well Corp.*, 443 F.3d 832, 836 (11th Cir. 2006).  We view the evidence and any inferences from it in the light most favorable to the non-moving parties, which are the Renaissance Entities in this appeal.  *See id.* at 836–37.

**III.**

A. <u>This case is not moot</u>

The Renaissance Entities argue, first, that Nationwide's sole claim for a declaratory judgment became moot when it paid to settle the *Evans* litigation. As a result, they contend, the district court lacked jurisdiction over this matter. Although the district court did not address this issue, federal-court jurisdiction is not subject to waiver, and we have an obligation to address it for the first time on appeal. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986).

Article III of the Constitution limits federal-court jurisdiction to actual cases and controversies. *Yunker v. Allianceone Receivables Mgmt., Inc.*, 701 F.3d 369, 372 (11th Cir. 2012) (per curiam). As a result, a case becomes moot—and thus nonjusticiable—when the parties no longer have a concrete interest in its resolution. *Crown Media, LLC v. Gwinnett Cty., Ga.*, 380 F.3d 1317, 1324 (11th Cir. 2004). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Alvarez v. Smith*, 558 U.S. 87, 93 (2009)).

In a declaratory judgment action, the question of mootness is "whether the facts alleged, under all the circumstances, show that there is a substantial

13

controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issue of a declaratory judgment." *Connell v. Shoemaker*, 555 F.2d 483, 486 (5th Cir. 1977) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).[1] We evaluate on a case-by-case basis whether a case or controversy exists. *Wendy's Int'l, Inc. v. City of Birmingham*, 868 F.2d 433, 435–36 (11th Cir. 1989).

Here, we have little trouble concluding that a live controversy remains between Nationwide and the Renaissance Entities. The parties' Funding and Status Quo Agreement expressly provided that the dispute over Nationwide's coverage obligations remained ongoing and that this litigation would resolve it. *Cf. U.S. Fire Ins. Co. v. Caulkins Indiantown Citrus Co.*, 931 F.2d 744, 748–49 (11th Cir. 1991) (holding that no justiciable controversy existed where settlement agreement unambiguously resolved dispute between insurer and its insured). Based on the recognition in that agreement that the parties did not resolve whether Nationwide or the Renaissance Entities would be responsible for $275,000 of the settlement paid to Evans, the district court declared that Nationwide was entitled to reimbursement of that amount. Although the Renaissance Entities argued before the district court that Georgia law does not allow an insurer to recoup settlement payments from its

---

[1] We have adopted as binding precedent all decisions of the former Fifth Circuit handed down before the close of business on September 30, 1981. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

insured, they have not challenged on appeal the district court's holding to the contrary. And that holding underscores that both parties have a concrete financial stake in the outcome of this proceeding. For these reasons, this case is not moot.

B. Georgia law governs this action

Second, the Renaissance Entities contend that the district court erred in holding that Georgia law, rather than California law, governs their insurance policy. The answer to this argument determines whether to apply California's "notice-prejudice rule." Under California's notice-prejudice rule, an insurer must demonstrate that a policyholder's delay in giving notice significantly hindered its ability to investigate and resolve a claim under the policy. *Pitzer Coll. v. Indian Harbor Ins. Co.*, 447 P.3d 669, 674 (Cal. 2019). In contrast, Georgia law does not require a showing of prejudice when an insurance contract requires notice as a condition precedent to coverage. *Se. Express Sys., Inc. v. S. Guar. Ins. Co. of Ga.*, 482 S.E.2d 433, 436 (Ga. Ct. App. 1997).

In cases under our diversity jurisdiction, we apply the choice-of-law rules of the forum state. *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir. 1998) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). When a contract is at issue, Georgia courts generally apply the law of the state where the parties made the contract. *Gen. Tel. Co. of Se. v. Trimm*, 311 S.E.2d 460, 461 (Ga. 1984). But if the contract specifies that performance is to occur in

another state, then that state's laws will apply. *Id.* An insurance contract is deemed "made" in the state where it was delivered. *Pink v. A.A.A. Highway Express*, 13 S.E.2d 337, 344 (Ga. 1941). However, these rules are subject to an exception: Georgia courts do not apply other states' common law. *Frank Briscoe Co., Inc. v. Ga. Sprinkler Co., Inc.*, 713 F.2d 1500, 1503 (11th Cir. 1983). Instead, they apply only the statutory law of other states, which includes case law interpreting those statutes. *Id.*

Here, the Renaissance Entities assert several reasons why California law should govern. Citing our decision in *Boardman Petroleum, Inc. v. Federated Mutual Insurance Co.*, 135 F.3d 750, they argue that California has greater interests in having its law control this dispute, that the policy was delivered to their address in California, and that the policy anticipated performance in California. They also contend that Georgia's bar on applying the common law of another jurisdiction did not preclude the district court from applying the notice-prejudice rule.

We need not address all these arguments because on the last point, we disagree. And that renders the other contentions moot.[2]

---

[2] Nevertheless, we note that our decision in *Boardman Petroleum, Inc. v. Federated Mutual Insurance Co.*, 135 F.3d 750, does not govern the choice-of-law question in this case. In *Boardman*, we faced consolidated cases originally filed in the district courts of different states, whose choice-of-law rules would each apply the state's own substantive law. *Boardman*, 135 F.3d at 753. Therefore, we adopted a "balancing of interests" analysis to resolve the conflict among the competing choice-of-law rules. *See id.* Here, however, we follow only Georgia's choice-of-law principles. *See Klaxon*, 313 U.S. at 496. Those principles do not involve a balancing of interests.

The Renaissance Entities have identified no California statute that creates California's notice-prejudice rule. Rather, the Renaissance Entities cite a host of statutes that merely regulate the insurance industry in California. *See, e.g.*, Cal. Ins. Code § 680 ("An insurer shall not transact any class of insurance which is not authorized by its charter."). They also cite California statutes that govern contract interpretation in general. But the choice-of-law inquiry under Georgia law is not whether any statute exists that bears on the contract before the court; it is whether a particular rule of decision comes from the statutes or from the common law of another jurisdiction. *See Coon v. Med. Ctr., Inc.*, 797 S.E.2d 828, 833–34 (Ga. 2017). And on that count, the notice-prejudice rule is purely a product of California common law, *see Ins. Co. of State of Pa. v. Associated Int'l Ins. Co.*, 922 F.2d 516, 523 (9th Cir. 1990) (describing the rule as one of "California decisional law"), meaning that it is subject to Georgia's choice-of-law rules that decline to apply the common law of other jurisdictions.

The Renaissance Entities try to avoid this result by pointing to a California statute that provides that insurers waive their objections to a policyholder's delay in providing notice when they do not promptly reserve their rights. Cal. Ins. Code § 554. But this provision is not the source of the notice-prejudice rule. Objecting to deficient notice is not the same as being prejudiced by it. And the Renaissance Entities do not argue on appeal that Nationwide failed to object to improper notice.

17

Nor do the California Supreme Court's decisions applying the notice-prejudice rule interpret or cite this statute. *See, e.g.*, *Campbell v. Allstate Ins. Co.*, 384 P.2d 155, 156 (Cal. 1963). As a result, Georgia courts would not apply the notice-prejudice rule even if California statutes otherwise governed these policies. *See Coon*, 797 S.E.2d at 833–34.[3] We therefore apply Georgia law here.

C. <u>The Renaissance Entities failed to provide proper notice to Nationwide as required by the policies</u>

Finally, the Renaissance Entities argue that the district court erred in holding that they did not adequately notify Nationwide of a potential claim, in accordance with the requirements of the policy. Although the Renaissance Entities first notified Nationwide of the attack on Evans over twenty-two months after it occurred, they contend that this delay was not unreasonable as a matter of law.

We disagree. Under Georgia law, clauses requiring timely notice to an insurer are valid as conditions precedent to coverage. *Richmond v. Ga. Farm Bureau Mut. Ins. Co.*, 231 S.E.2d 245, 250 (Ga. Ct. App. 1976). The policy behind this rule is to

---

[3] In their reply brief, the Renaissance Entities argue that Georgia's exclusion of other jurisdictions' common law is limited to states that were formed from the original thirteen colonies. The Georgia Supreme Court declined to address this issue in its recent decision on the exception. *See Coon*, 797 S.E.2d at 834 n.5. As the Renaissance Entities did not raise this argument in their opening brief, we do not consider it here. *See United States v. Oakley*, 744 F.2d 1553, 1556 (11th Cir. 1984) ("Arguments raised for the first time in a reply brief are not properly before the reviewing court."). Even so, we observe that the Georgia Supreme Court has applied the exclusion to the common law of a state that was not one of the original thirteen colonies (or a state created from one)—Florida. *See Motz v. Alropa Corp.*, 15 S.E.2d 237, 238 (Ga. 1941).

18

allow insurers an early opportunity to investigate potential claims, prepare for litigation, and evaluate settlement. *Se. Express Sys.*, 482 S.E.2d at 436. Although it is generally a jury's role to decide whether a policyholder has provided adequate notice, Georgia courts have held that prolonged periods of unjustified delay are unreasonable as a matter of law. *E.g.*, *Allstate Ins. Co. v. Walker*, 562 S.E.2d 267, 268 (Ga. Ct. App. 2002).

The Renaissance Entities argue that their delay was legally justified because, following Braitanbaum's good-faith investigation, they believed they bore no responsibility for the attack. But "misplaced confidence" does not excuse late notice to an insurer under Georgia law. *Protective Ins. Co. v. Johnson*, 352 S.E.2d 760, 761 (Ga. 1987) (citation omitted). For this reason, Georgia courts have approved of granting summary judgment to insurers following even shorter periods of delay. *See, e.g.*, *id.* (seventeen months).

Under the circumstances of this case, the Renaissance Entities' twenty-two-month delay in providing notice to Nationwide was unreasonable as a matter of law. In reaching this conclusion, we have considered "the nature of the event, the extent to which it would appear to a reasonable person in the circumstances of the [Renaissance Entities] that injuries or property damage resulted from the event, and the apparent severity of any such injuries" to Evans. *Forshee v. Emps. Mut. Cas. Co.*, 711 S.E.2d 28, 31 (Ga. Ct. App. 2011) (citing cases). Here, Braitanbaum

19

considered Evans to be a "team member," even though the Renaissance Entities did not employ her. His investigation indicates that the Renaissance Entities fully understood the seriousness of the attack on her. And Braitanbaum has admitted that he communicated with the broker for his workers' compensation insurance because he was concerned about liability. Thus, based on the information available to the Renaissance Entities immediately after the incident, we conclude that their actions were unreasonable as a matter of law.

## IV.

For the foregoing reasons, we affirm the district court's grant of summary judgment to Nationwide.

**AFFIRMED.**